STATE OF MICHIGAN
COURT OF APPEALS

STEPHEN R. COLE, GREGORY A. COLE, and
ELLEN ANN COLE,

        Plaintiffs/Counter Defendants-
        Appellees,

v

BENZIE COUNTY PARKS & RECREATION
COMMISSION and COUNTY OF BENZIE,

        Defendants/Counter Plaintiffs-
        Appellants,

and

BENZIE COUNTY ROAD COMMISSION,

        Defendant/Counter Plaintiff-
        Appellee.

UNPUBLISHED
February 9, 2016

No.   325141
Benzie Circuit Court
LC No.   09-008496-CZ

STEPHEN R. COLE, GREGORY A. COLE, and
ELLEN ANN COLE,

        Plaintiffs/Counter Defendants-
        Appellees,

v

BENZIE COUNTY PARKS & RECREATION
COMMISSION and COUNTY OF BENZIE,

        Defendants/Counter Plaintiffs,

and

BENZIE COUNTY ROAD COMMISSION,

        Defendant/Counter Plaintiff-

No.   325384
Benzie Circuit Court
LC No.   09-008496-CZ

-1-

Appellant.

Before: MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

After a bench trial, the trial court entered a final judgment and order granting in part the claims of plaintiffs, Stephen R. Cole,[1] Gregory A. Cole, and Ellen Ann Cole, for a public road by common-law dedication, implied easement, and prescriptive easement against defendants, the County of Benzie (the County), Benzie County Parks and Recreation Commission (the P & R Commission), and Benzie County Road Commission (the Road Commission). In these consolidated appeals, the County and the P & R Commission (Docket No. 325141) and the Road Commission (Docket No. 325384) each appeal as of right the final judgment and order as it relates to the easement on their property. We affirm in part and reverse in part.

I. FACTS AND PROCEDURAL HISTORY

A. PROPERTIES AT ISSUE

This case involves three adjoining parcels—the Railroad Point Parcel (RR Point Parcel), the Cole Parcel, and the County Road Commission Parcel (CRC Parcel)—which are located along the southern shore of Crystal Lake in Benzie County. The RR Point Parcel is the westernmost property and is owned by the County and operated by the P & R Commission. Plaintiffs own the Cole Parcel, which is located in between the other two parcels. The CRC Parcel, located to the east of the Cole Parcel, is owned by the Road Commission and leased to the County. To the north of all three parcels is Crystal Lake. To the south, the RR Point Parcel has frontage on Mollineaux Road, but the Cole Parcel and the CRC Parcel do not. The Cole Parcel is separated by a steep bluff between the smaller lakefront portion of the parcel and the remainder of the parcel.

The CRC Parcel is heavily wooded, and neither the CRC Parcel nor the RR Point Parcel have any structures built thereon. The remnants of an old cabin were found on the Cole Parcel in 1985.

B. CLAIMED EASEMENTS

Plaintiffs claim the right to access their property over a two-track road or trail that crosses the RR Point Parcel and the CRC Parcel. The portion of the two-track that crossed the RR Point Parcel was designated as Easement A and the portion that crosses the CRC Parcel was

---

[1] Plaintiff Stephen R. Cole died during the pendency of this case and Gregory Cole, as personal representative of the Estate of Stephen R. Cole, was formally substituted as a party. According to plaintiffs, Stephen R. Cole's estate has been probated and Gregory and Ellen Cole are now the sole owners of the Cole Parcel.

designated as Easement B. Easement A begins at Mollineaux Road and extends through the RR Point Parcel to the western boundary of the Cole Parcel. This easement provides access to the Cole Parcel from Mollineaux Road. Easement B begins at the eastern boundary of the Cole Parcel and extends in a loop through the CRC Parcel and back to the eastern boundary of the Cole Parcel near Crystal Lake. This easement provides access to the lakefront portion of the Cole Parcel by skirting the steep bluff. Plaintiffs also claimed an easement along the Crystal Lake shoreline of the RR Point Parcel and passing through two parcels owned by third parties, which was designated as Easement C. The trial court found that plaintiffs' claim regarding Easement C was not ripe for decision and dismissed the claim without prejudice. The following aerial view depicts the three parcels and the locations of the claimed easements:



## C. TITLE HISTORY

The RR Point Parcel, the Cole Parcel, and the CRC Parcel were originally one parcel of land owned by a single party. In 1912 and 1913, the CRC Parcel was split from the RR Point Parcel and the Cole Parcel. At some point, the State of Michigan acquired the CRC Parcel and, in 1937, the State deeded the CRC Parcel to the Road Commission. In 1938, the then-owners of the RR Point Parcel and the Cole Parcel, Jacob and Maude Hauch, executed a release of right-of-way granting a 66 foot wide easement to the Road Commission for "road right of way purposes."

-3-

In 1962, the RR Point Parcel and the Cole Parcel were split. The then-owner of both parcels, Ruth M. Frees, sold the RR Point Parcel to Edmund and Ingrid Appelhof and Fred and Violet Bradford, and sold the Cole Parcel to J. Agnew Appelhof and Ruth Appelhof. The deed conveying the RR Point Parcel provided that the conveyance was "subject to easements and rights of way of record, including easements over said Lot 3 to the East 320 feet thereof." The deed conveying the Cole Parcel described the property being conveyed and provided: "Except railroad right-of-way for Ann Arbor Railroad and easement to Benzie County Road Commission."

In 1963, the Road Commission leased the CRC Parcel to the County for 99 years "for park purposes only." In February 1985, plaintiffs purchased the Cole Parcel by land contract from J. Agnew Appelhof. In 1998, Ingrid Devine, a/k/a Ingrid Appelhof, deeded the RR Point Parcel to the County.

## D. USE OF EASEMENTS

In addition to the remnants of an old cabin, Gregory discovered an old tire on an unspecified location of the two-track and the trial court took judicial notice of the fact that the tire appeared to be from before the 1940s. One witness, Jack Goodson, testified that, as a child, he used to travel on the two-track by Jeep with his grandfather, and later drove his ATV and truck on the track. Although Goodson did not provide specific dates of his use, he testified that his grandparents owned a cottage in the area since 1942 and his parents built a cottage in 1957. Another witness, Thomas Larson, drove on the two-track several times a year from 1956 to 1964 or 1965 in order to access Crystal Lake and fish. After that time, he also walked on the two-track once or twice a week.

Gregory testified that he, his family, his friends, and his neighbors used Easements A, B, and C hundreds of times from 1966 to 1985. After signing the land contract in 1985, he also used the easements to access the Cole Parcel. He and his family were at the property 20 to 26 weekends a year, and three or four weeks a year in the summer.

Gregory kept brush and vegetation off the two-track by weed whacking two or three times a year. He also cleared limbs so that an emergency vehicle could drive down the two-track. Gregory maintained the entire length of Easements A, B, and C. Gregory did not ask for permission to perform the maintenance. Gregory had no knowledge of the Road Commission performing maintenance on Easement B. In 2001, when plaintiffs had the portion of the Betsie Valley Trail on their property relocated, dump trucks drove on the easements for three days. The excavators also put down more gravel on Easement A and replaced the culvert on the Cole Parcel.

Mark Hunt, a friend of Greg and Stephen, testified that Easement A was more like a driveway than a two-track, at least near Mollineaux Road. He testified that, from Mollineaux Road, it is apparent that heavy equipment was used and dirt and gravel were put down, and it is visible that someone maintained the road in the mid-1990s.

-4-

## E. TESTIMONY REGARDING ALLEGED PUBLIC ROAD

Nancy Roseman, the engineer manager of the Road Commission, opined that no portion of Easement A or Easement B was a public road. She testified that there was no gravel on Easement B. According to Roseman, there was no resolution accepting Easement A or Easment B as a county road, Easement A and Easement B did not appear on any certification maps going back to the 1950s, and there were no records of maintenance performed on Easement A or Easement B. Roseman testified that she was not aware of when the current system for keeping track of maintenance was implemented and the records were sporadic further back in time. The trial court took judicial notice of the fact that, historically, roads were worked on without any record of maintenance.

Robert Weaver, a former manager of the Road Commission, believed the logging operation, which occurred in the 1980s, took place on the CRC Parcel. In its answers to interrogatories, the Road Commission stated that it has performed routine maintenance on the easement granted to it in 1938. In its amended response, the Road Commission stated that it never maintained the easement as a roadway and had no maintenance records.

## F. RELOCATION OF BETSIE VALLEY TRAIL AND BLOCKING ACCESS

In 1997, plaintiffs sought to relocate the Betsie Valley Trail across their property. According to Gregory, plaintiffs approached the Road Commission, informed it of their right to use Easement B, and attempted to reach a resolution. Gregory testified that plaintiffs' attorney never asked for permission from the Road Commission to use Easement A and Easement B. Robert Rosa, a member of the Road Commission, testified that at a 1998 meeting, Gregory was trying to see if the Road Commission believed he had access to his property. Weaver believed that, at the 1998 meeting, Gregory requested to use the Road Commission's easement.

In 1999, the owner of the property to the south of the Cole Parcel, Nola Noffsinger, placed two piles of dirt on the entry of Easement A because she believed it was her property; she subsequently gave Gregory permission to remove the dirt. In 2002, Easement A was again blocked after a vote by the P & R Commission. After that time, plaintiffs could only access their property by motor vehicle over Easement C. A gate was installed over Easement C, but it was never locked. One of the individuals over whose property Easement C traverses, Barbara Marshall, testified that she has never given Gregory permission to access his property over her driveway.

## G. LAWSUIT AND TRIAL COURT'S RULINGS

Plaintiffs filed this action seeking recognition of their right to access their property over Easements A, B, and C under alternative theories of implied easement, express easement (public road), and prescriptive easement. Defendants' counterclaims for trespass were voluntarily dismissed. After the trial court denied the parties' cross-motions for summary disposition, a bench trial was held.

After the bench trial, the trial court granted plaintiffs' claim for a public road by common-law dedication over Easement A. The trial court found that the release of the road right-of-way constituted evidence of an intent to dedicate, and that although there was no formal

acceptance of the dedication, it was proper to infer that the release was solicited by the Road Commission in order to access its property. The trial court also concluded that the solicitation amounted to acceptance of the dedication. With regard to whether maintenance was performed, the trial court found that there were admissions in an answer to the complaint and answers to interrogatories that the road was worked on, although there was testimony at trial that there were no records of such maintenance, at least going back to the 1950s. The trial court further found that it was not unusual for road crews to work on two-tracks in the 1940s and there to be no record of it. Based on the condition and construction of the rusted culvert on the Cole Parcel, the trial court found that it was installed in the 1940s and, more likely than not, it was put in by the Road Commission. The trial court accepted Larson's testimony that the track was drivable in 1956 and into the 1960s, and found that it was drivable because of maintenance performed by the Road Commission. Thus, the trial court concluded that plaintiffs had access to their property through Easement A. The trial court, however, found that the Hauchs, who executed the 1938 release, could not burden the Road Commission's property. Thus, it denied the claim for a public road by common law dedication over Easement B.

The trial court also granted plaintiffs' claim for an implied easement over Easement A. The trial court found that there was an easement by necessity over Easement A and the common grantor, Frees, did not clearly intend to terminate access to the Cole Parcel when the parcels were split. The trial court found that the only fair interpretation of the deed to J. Agnew Appelhof was that the conveyance was subject to the easement to the Road Commission. The trial court also discussed the elements of an easement implied from a quasi-easement. The trial court stated that it could not find evidence of unity of title when the trail existed, although it suspected that it did exist. Regarding continuity, the trial court stated that the caselaw was inconsistent and the Michigan Supreme Court had ruled on occasion that a driveway could be the subject of an easement by implied grant or implied reservation. With regard to necessity, the trial court found that strict necessity was no longer required for an easement by implied reservation. The trial court denied the implied easement claim as to Easement B.

Finally, on the basis of the Michigan Supreme Court's decision in *Du Mez v Dykstra*, 257 Mich 449; 241 NW 182 (1932), the trial court granted plaintiffs' claim for a prescriptive easement over Easement B, finding that plaintiffs used Easement B openly, notoriously, hostilely, and continuously for 15 years to access the beach and their property from the west. The trial court concluded that the Road Commission was virtually never on the property from the 1950s to the 1990s, and during that time, plaintiffs laid down gravel, maintained Easement B, and used it to access the beach. The trial court further held that Easement B was open and obvious and had been formally released as a right-of-way for road purposes (although the release could not actually make Easement B a public road), which should have given the Road Commission heightened awareness that others may be using the road. Thus, the trial court found the requisite heightened notice based on plaintiffs' use and maintenance of Easement B. Although not discussed in its ruling from the bench, the trial court also granted plaintiffs' claim for a prescriptive easement over Easement A.

## II. STANDARDS OF REVIEW

We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. A finding is clearly erroneous if there is no

evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made. The trial court's findings are given great deference because it is in a better position to examine the facts. [*Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250-251; 792 NW2d 781 (2010) (citations omitted).]

## III. DOCKET NO. 325141

### A. PUBLIC ROAD DEDICATION

The County and the P & R Commission contend that the trial court erred in finding a public road dedication over Easement A. We disagree.

"For a road to become public property, there generally must be either a statutory dedication and an acceptance on behalf of the public, a common law dedication and acceptance, or a finding of highway by public user." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm'n*, 236 Mich App 546, 554; 600 NW2d 698 (1999). The trial court found a common-law dedication of a public road, which requires "(1) intent by the property owners to offer the land for public use, (2) an acceptance of the offer by the public officials and maintenance of the road by public officials, and (3) use by the public generally." *Id*. "A common-law dedication does not need to be formal, and dedication may occur without a grant or even written words." *Pine Bluffs Ass'n v DeWitt Landing Ass'n*, 287 Mich App 690, 719; 792 NW2d 18 (2010) (citation and quotation marks omitted). However, "there must be a clear and positive intent to dedicate, as unequivocally demonstrated by the actions of the owners. If intent is established, there must also be either an express declaration or some acts by a public authority indicating acceptance." *Id*. (citation and quotation marks omitted).

The County and the P & R Commission do not dispute the trial court's finding that there was evidence of intent to dedicate based on the 1938 release for "road right of way purposes." The County and the P & R Commission also do not dispute the trial court's finding that there was acceptance based on evidence that the release was solicited by the Road Commission in order to access its property. Instead, they argue that the trial court clearly erred in finding that any maintenance had been performed on the dedicated public right of way, and misapplied the law in finding that any maintenance by the Road Commission on the CRC Parcel constituted acceptance of the dedication. They claim that the trial court failed to consider the Road Commission's denial of maintenance in its amended answer to plaintiffs' interrogatories and the fact that there were no records of maintenance.

The trial court did not clearly err in finding that the Road Commission performed maintenance on the dedicated road. The Road Commission initially stated that it performed maintenance on the roadway. In its answer to the amended complaint, it stated that it *may* have performed maintenance on it, but denied that it was a certified road. In its amended response to plaintiffs' interrogatories, the Road Commission denied having maintained the easement as a roadway and stated that there was no record of maintenance. The trial court did not err in finding that there were some admissions of maintenance, and although it did not specifically refer to the Road Commission's denial in its amended response to plaintiffs' interrogatories, the trial court was aware of the Road Commission's position that it denied having performed

maintenance based on the lack of records. As the trial court also noted, there was testimony at trial that there was no record of maintenance. However, because there may not have been records of maintenance performed in the past, the trial court did not clearly err in finding that the lack of records was not determinative.

The County and the P & R Commission also argue that, if maintenance was performed, "it seems more likely" that any maintenance was performed on the CRC Parcel (which was not part of the dedication), where the lumbering operation occurred. However, the trial court's finding that the culvert on the Cole Parcel was put in by the Road Commission in the 1940s was supported by evidence of its condition and Larson's testimony that the road was drivable in the 1950s and 1960s because he used it in order to access Crystal Lake and fish from 1956 to 1964 or 1965. Given this testimony, along with the fact that there may not be historical records of maintenance performed, we are not left with a definite and firm conviction that the trial court made a mistake in finding that the Road Commission performed maintenance on the dedicated road in the 1940s. Moreover, Larson's testimony, as well as the testimony of several others that used the road in the 1950s and 1960s, was evidence that the road was kept passable. Evidence that the road was kept in a reasonably passable condition is sufficient to find acceptance, and it is not necessary for maintenance to have been performed on every part of the road or every year. *Indian Club v Bd of Co Rd Comm'rs of Lake Co*, 370 Mich 87, 91; 120 NW2d 823 (1963). Thus, the trial court did not clearly err in finding that the Road Commission performed maintenance sufficient to establish a common-law dedication and acceptance.

## B.  IMPLIED EASEMENT

Next, the County and the P & R Commission contend that the trial court erred in finding an implied easement over Easement A. We disagree.[2]

> "An implied easement may arise in essentially two ways": (1) an easement by necessity and (2) an easement implied from a quasi-easement. An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." "An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his property and leaves himself landlocked." "This sort of implied easement is not dependent on the existence of any established route or quasi-easement prior to the severance of the estate by the common grantor; it is first established after the severance." "A right of way of necessity is not a perpetual right. It ceases to exist when the necessity for its continuance ceases."

> In contrast, an easement implied from a quasi-easement "requires that at the severance of an estate an obvious and apparently permanent servitude already

---

[2] Although it is unclear whether, with regard to Easement A, the trial court found there was an easement implied from a quasi-easement, or an easement by necessity, we nonetheless address both types of implied easements, as the parties have done on appeal.

exists over one part of the estate and in favor of the other. It also requires a showing of [reasonable] necessity . . . ." Thus, "three things must be shown: (1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits." Our Supreme Court has explained that "[a] continuous easement is one which may be enjoyed without any act upon the part of the party claiming it . . . . A noncontinuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual." An easement implied from a quasi-easement is an easement appurtenant. An easement appurtenant runs with the land. [*Charles A Murray Trust v Futrell*, 303 Mich App 28, 41-42; 840 NW2d 775 (2013) (citations omitted).]

### 1. FREES'S INTENT

The County and the P & R Commission contend that there could be no implication of an easement because Frees specifically did not convey Easement A when establishing the Cole Parcel.

It is a well-settled doctrine of the law of easements that where there are no restrictive words in the grant the conveyance of the land will pass to the grantee all those apparent and continuous easements which have been used, and are at the time of the grant used, by the owner of the entirety for the benefit of the parcel granted, and also, all that appear to belong to it, as between it, and the property which the vendor retains; and, hence, when the owner of an entire estate, makes one part of it visibly dependent for the means of access upon another, and creates a way for its benefit over the other, and then grants the dependent part, the other part becomes subservient thereto, and the way constitutes an easement appurtenant to the estate granted, and passes to the grantee, as accessorial to the beneficial use and enjoyment of the land. [*Rannels v Marx*, 357 Mich 453, 457; 98 NW2d 583 (1959) (citation and quotation marks omitted).]

Moreover, "[i]n a conveyance that deprives the owner of access to his property, access rights will be implied unless the parties clearly indicate they intended a contrary result." *Chapdelaine v Sochocki*, 247 Mich App 167, 173; 635 NW2d 339 (2001).

Although the deed conveying the Cole Parcel from Frees to J. Agnew and Ruth Appelhof did not expressly grant access over Easement A, the trial court found that Frees did not clearly intend to terminate access to the Cole Parcel when the parcels were split and that the only fair interpretation of the deed to J. Agnew Appelhof was that the conveyance was subject to the easement to the Road Commission. The deed conveying the RR Point Parcel expressly provided that the conveyance was "subject to easements and rights of way of record, including easements over said Lot 3 to the East 320 feet thereof." However, the deed from Frees to J. Agnew and Ruth Appelhof described the property being conveyed and provided: "Except railroad right-of-way for Ann Arbor Railroad and easement to Benzie County Road Commission." Although that

deed did not expressly grant Easement A, it also did not expressly restrict the use of Easement A. Accordingly, the trial court's finding that Frees did not clearly intend to terminate access to the Cole Parcel when the parcels were split was not clearly erroneous.

## 2. QUASI-EASEMENT

With regard to an easement implied from a quasi-easement, the County and the P & R Commission contend that Easement A does not satisfy the continuity requirement because a trail is a "way," which constitutes a discontinuous easement. In *Bubser v Ranuette*, 269 Mich 388, 392; 257 NW 845 (1934), the Michigan Supreme Court stated: "A discontinuous easement is one the use of which can only be had by the interference of man. Hence a continuous easement is one which is exercised without the interference of man. A way is a discontinuous easement, but drains and sewers are continuous easements." Similarly, in *Waubun Beach Ass'n v Wilson*, 274 Mich 598, 606; 265 NW 474 (1936), the Court stated that "[a] noncontinuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual." However, the plaintiff cited to and relied on *Rannels* and *Kamm v Bygrave*, 356 Mich 189; 96 NW2d 770 (1959), in which the Michigan Supreme Court found an implied easement based on the use of a driveway. The trial court found persuasive the fact that, without overruling previous authority or giving more than passing attention to the continuity requirement, the Supreme Court has held that a driveway could be the subject of an implied easement. We conclude that, given this authority, the trial court did not err in finding that Easement A, a two-track road, could be the subject of an implied easement.[3]

Although not disputed by the County and the P & R Commission, we conclude that the other requirements for an easement implied from a quasi-easement are also met. An easement implied from a quasi-easement "requires that at the severance of an estate an obvious and apparently permanent servitude already exists over one part of the estate and in favor of the other." *Schmidt v Eger*, 94 Mich App 728, 733; 289 NW2d 851 (1980). The trial court stated that it was unable to find unity of title at the time the trail that is Easement A existed, although it suspected that the trail did exist then. We conclude that Easement A was obvious and apparently permanent at the time of severance in 1962 based on the language in the deed conveying the RR Point Parcel, which provided that the conveyance was "subject to easements and rights of way of record, including easements over said Lot 3 to the East 320 feet thereof." Moreover, the release to the Road Commission shows that the roadway was in use since at least 1938 and there was evidence that the roadway was drivable in the 1950s and 1960s.

---

[3] Although this Court's opinion in *Charles A Murray Trust* quoted the language from *Waubun Beach Ass'n* regarding continuous and noncontinuous easements, an easement implied from a quasi-easement was not at issue in that case. See *Charles A Murray Trust*, 303 Mich App at 42-44. Moreover, the Court noted that "*at the time the trial court issued its decree in 1934*, the law in Michigan was that a right of way is not a continuous easement for purposes of establishing an easement implied from a quasi-easement." *Id*. at 43-44 (emphasis added). This suggests that the Court may have been aware of the change in the law.

Additionally, with regard to the necessity requirement, we agree with the trial court that strict necessity is not required to establish an easement implied from a quasi-easement. Rather, only reasonable necessity is required. *Schmidt*, 94 Mich App at 735 (holding that only a showing of reasonable necessity is required regardless of whether a grant or reservation is sought to be implied). This Court has concluded that reasonable necessity was established where alternatives required considerable effort and expense. See *Schmidt*, 94 Mich App at 735.

Plaintiffs established that use of Easement A was reasonably necessary to access their property. The only other potential access discussed at trial was Easement C, but plaintiffs' claim regarding that easement was dismissed. There was also testimony from the owner of property over which Easement C traverses that she never gave Gregory permission to access his property over her driveway. Thus, plaintiffs established an easement implied from a quasi-easement regarding Easement A.

### 3. EASEMENT BY NECESSITY

We also agree with the trial court and plaintiffs that an easement by necessity was established because use of Easement A was strictly necessary to reach the Cole Parcel, which was landlocked at the time it was separated from the RR Point Parcel. See *Charles A Murray Trust*, 303 Mich App at 45 (holding that strict necessity is required to establish an easement by necessity). This Court has stated:

> Plaintiff met that burden [of reasonable necessity], and in fact showed strict necessity given that his remaining parcel was landlocked and that, without the easement, he would have no right of ingress and egress to the remaining parcel. It was not a matter of mere convenience, and it was immaterial that plaintiff could have negotiated a right of access with other adjoining landowners or that defendants might have been willing to negotiate and sell plaintiff an access easement to the adjoining 1-/2-acre parcel. [*Chapdelaine*, 247 Mich App at 173.]

The County and the P & R Commission do not dispute that the Cole Parcel was landlocked at the time it was split from the RR Point Parcel, but argues that plaintiffs have the opportunity to acquire access by necessity from two other parcels. However, it is irrelevant to a finding of strict necessity that plaintiffs might negotiate or purchase access over another route. Thus, the trial court did not err in finding an easement by necessity.

### C. PRESCRIPTIVE EASEMENT

Finally, the County and the P & R Commission contend that the trial court erred in finding a prescriptive easement over Easement A. We agree.

"A prescriptive easement results from open, notorious, adverse, and continuous use of another's property for a period of 15 years. A prescriptive easement requires elements similar to adverse possession, except exclusivity. The plaintiff bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010) (citations omitted). When the land at issue is wild or unenclosed, there is a higher burden to show hostility or adversity and mere use

is not sufficient. *Du Mez*, 257 Mich at 451. Rather, the plaintiff must "by word or act" give "notice of a claim of right before he may obtain title by prescription." *Id*.

We agree with the trial court that the land in question—the RR Point Parcel, which is operated as a park and has no structures on it is wild and unenclosed.[4] Plaintiffs, relying on *Duck v McQueen*, 263 Mich 325, 329; 248 NW 637 (1933), claim that the parcels at issue are not wild lands based on consideration of the surrounding area. We disagree. Our Supreme Court has made it clear that in determining whether the land is wild and unenclosed the character of the subject parcel controls, not the character of surrounding parcels. See *Du Mez*, 257 Mich at 451. As such, plaintiffs were subject to the higher burden of proving hostile use.

Under *Du Mez*, plaintiffs' mere use of Easement A to access their property was not sufficient to give defendants notice of their claim of right. Plaintiffs, however, contend that their usage and maintenance of the road was different from that of the general public and was sufficient to provide such notice. They contend that, contrary to *Du Mez*, in which the party claiming adverse use repaired the road with the permission and financial assistance of the owners, plaintiffs repaired and maintained Easement A without permission, involvement, or cooperation of defendants. This Court has found that the placement of gravel and stone over a disputed strip was not so inconsistent with mutual use to place the owner on notice of an adverse and hostile claim. See *Wood v Denton*, 53 Mich App 435, 441-442; 219 NW2d 798 (1974). In the adverse-possession context, 'hostility' refers to use of property without permission and in a manner that is inconsistent with the rights of the true owner." *Jonkers v Summit Twp*, 278 Mich App 263, 273; 747 NW2d 901 (2008). In the context of wild lands, the presumption of permissive use is even stronger. See *Du Mez*, 257 Mich at 451. Accordingly, we conclude that the trial court erred in finding that plaintiffs' use and maintenance was sufficient to give notice of a claim of right. Plaintiffs' maintenance and placement of gravel on Easement A was not inconsistent with the rights of the true owner or with mutual use such that it provided notice of their claim of right. Thus, the trial court erred in finding a prescriptive easement over Easement A.

IV. DOCKET NO. 325384

In Docket No. 325384, the Road Commission contends that the trial court erred in finding a prescriptive easement over Easement B. We agree.

For the same reasons discussed above, we conclude that the CRC Parcel was wild and unenclosed land and plaintiffs' use and maintenance of Easement B was insufficient to give notice of a claim of right to the Road Commission under *Du Mez*. As it relates to the CRC Parcel, we further reject the trial court's suggestion that the release of the right of way, which

---

[4] As noted, the trial court found that plaintiffs acquired an easement by prescription over both Easement A and Easement B, but it only discussed the CRC Parcel and Easement B in its ruling from the bench. We presume that its findings also applied to the RR Point Parcel and Easement A.

could not apply to Easement B, supported a finding of heightened notice of plaintiffs' claim of right. Thus, the trial court erred in finding an easement by prescription over Easement B.

## V. CONCLUSION

In Docket No. 325141, we affirm in part, reverse in part, and remand for entry of an order consistent with this opinion. In Docket No. 325384, we reverse and remand for entry of an order consistent with this opinion. We do not retain jurisdiction. No costs, as neither party fully prevailed on appeal. MCR 7.219(A).

/s/ William B. Murphy
/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello