# STATE OF MICHIGAN

# COURT OF APPEALS

MOUHAJER DEVELOPMENT,

        Plaintiff-Appellee,

v

ESTATE OF DARIO TOMEI by DINO TOMEI,
Personal Representative,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 328842
Wayne Circuit Court
LC No. 15-006878-CH

Before: TALBOT, C.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

In this action seeking a prescriptive easement or an easement by necessity, as well as to quiet title to real property, defendant appeals as of right the trial court's order granting summary disposition in favor of plaintiff. We affirm the trial court's decision to quiet title to certain property in favor of plaintiff. However, because plaintiff cannot maintain an action for a prescriptive easement or an easement by necessity, we reverse and remand for entry of summary disposition in favor of defendant with respect to plaintiff's easement claims.

In 2014, plaintiff purchased a parcel of land ("Parcel C") in the City of Westland at a sheriff's sale. Dario Tomei was the previous owner of Parcel C. He was the sole owner of the property from 1988 until he lost the property to foreclosure for non-payment of taxes. Parcel C consists of 1.09 acres. There is a building on the site, which had been used as a restaurant between 1982 and 2010. In the rear of the building sits land which apparently had been used as a parking lot for the restaurant. When the restaurant was operational, the parking lot on Parcel C was accessed via an adjoining 50-foot parcel of land ("the 50-foot access").

However, it is undisputed that plaintiff did not purchase the 50-foot access at the sheriff's sale. That is, the 50-foot access was not included in the foreclosure of Dario's property. And, the deed obtained by plaintiff at the sheriff's sale clearly includes a total of 1.09 acres and a legal description that refers only to Parcel C. In short, plaintiff did not purchase the 50-foot access.

The fact that the 50-foot access was not included in the foreclosure sale of Parcel C is noteworthy because Dario's 1988 warranty deed pertaining to Parcel C undoubtedly evinced his ownership of 1.4 acres of property, consisting of Parcel C *and* the 50-foot access. For reasons not entirely clear from the record, there was apparently some disconnect between the legal ownership of the 50-foot access as set forth in Dario's deed and the tax records relating to the 50-

-1-

foot access. In particular, while Dario's deed for Parcel C plainly included the 50-foot access, the property description in the tax records relating to Parcel C did not include the 50-foot access.[1] The reasons for this discrepancy are unknown.

Nonetheless, what is clear is that the 50-foot access was not foreclosed upon and plaintiff did not purchase the 50-foot access. Plaintiff now owns Parcel C. Dario remained the owner of the 50-foot access until his death, and the 50-foot access is now owned by his estate.[2] In other words, under Dario's ownership, Parcel C and the 50-foot access were one property, and the tax sale effectively severed the 50-foot access from Parcel C.

After purchasing Parcel C, plaintiff filed the current suit seeking a prescriptive easement or an easement by necessity for use of the 50-foot access. The parties filed cross-motions for summary disposition. The trial court granted summary disposition in favor of plaintiff under MCR 2.116(C)(10), concluding that plaintiff was entitled to both a prescriptive easement and an easement by necessity to the 50-foot access. The trial court also quieted title in favor of plaintiff with respect to Parcel C.[3] Defendant now appeals as of right.

On appeal, defendant argues that the trial court erred by granting summary disposition to plaintiff and denying summary disposition to defendant because plaintiff's claims for a prescriptive easement and an easement by necessity are without merit. In particular, with respect to an easement by necessity, defendant argues that plaintiff's claim must fail because Parcel C directly abuts Wildwood Street and thus plaintiff's desire to use the 50-foot access is based on convenience rather than strict necessity. Regarding plaintiff's prescriptive easement claim, defendant disputes only whether plaintiff can show that use of the 50-foot access by the owner of Parcel C was adverse. That is, defendant argues that, at all times, the 50-foot access and Parcel C were owned by identical person or persons, such that use of the 50-foot access could not have been adverse to the rights of the owner. We agree.

I. STANDARD OF REVIEW

---

[1] For property tax purposes, the 50-foot access was included in the property description of adjoining property owned jointly by Dario and Angelo Tomei. Originally, Dario and Angelo owned a total of 4.46 acres, which included Parcel C and the 50-foot access. They later divided the land into smaller parcels; and, in 1983, Angelo quitclaimed his rights to Parcel C, including the 50-foot access, to Dario and his wife. In 1983, there was then an additional quitclaim transfer of Parcel C and the 50-foot access to a co-partnership named Molly McGuires, in which Dario was a partner. Finally, in 1988, Dario obtained a warranty deed for Parcel C and the 50-foot access. All of these transfers undisputedly contained a description of 1.4 acres of property, consisting of Parcel C as well as the 50-foot access. But, for unknown reasons, the tax records were not modified to reflect the fact that the 50-foot lot was part of Parcel C.

[2] Dario passed away in 2015, and his son, Dino Tomei, was authorized as the personal representative of the estate.

[3] Defendant did not contest plaintiff's ownership of Parcel C, and the trial court's decision to quiet title to that property is not before us on appeal.

"This Court reviews de novo a trial court's decision regarding a motion for summary disposition." *Home-Owners Ins Co v Smith*, 314 Mich App 68, 73; 885 NW2d 324 (2016). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). When reviewing a motion under this subsection, the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties must be considered "in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*.

Additionally, "because deeds are contracts, the interpretation of their language is an issue of law, which this Court reviews de novo." *Penrose v McCullough*, 308 Mich App 145, 147; 862 NW2d 674 (2014). Likewise, a trial court's equitable decisions, including decisions in an action for an easement, are reviewed de novo. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007).

## II. EASEMENT BY NECESSITY

An action seeking an easement is equitable in nature. *Mulcahy*, 276 Mich App at 698. Easements are not a possessory interest in real estate; rather, "[a]n easement is a right to use the land burdened by the easement[.]" *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007) (internal quotation marks omitted). As recently explained by this Court:

> An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." *Chapdelaine v Sochocki,* 247 Mich App 167, 172, 635 NW2d 339 (2001), citing [*Schmidt v Eger*, 94 Mich App 728, 732; 289 NW2d 851 (1980)]. "An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his property and leaves himself landlocked." *Chapdelaine,* 247 Mich App at 172–173. "This sort of implied easement is not dependent on the existence of any established route or quasi-easement prior to the severance of the estate by the common grantor; it is first established after the severance." *Schmidt,* 94 MichApp at 733. "A right of way of necessity is not a perpetual right. It ceases to exist when the necessity for its continuance ceases." [*Charles A Murray Trust v Futrell*, 303 Mich App 28, 41–42; 840 NW2d 775 (2013).]

"[S]trict necessity is required to establish an easement by necessity."[4] *Id.* at 45. Strict necessity is a demanding standard that will only be satisfied if the easement is "*absolutely* necessary." *id.*

---

[4] Although plaintiff argues on appeal that strict necessity exists in this case, plaintiff's briefing is somewhat inconsistent in that plaintiff also indicates that only reasonable necessity is required. Reasonable necessity is required for a claim of an easement implied from a quasi-easement. See

*Id.* (citation omitted) (emphasis in original). "Mere convenience, or even reasonable necessity, will not be sufficient if there are alternative routes, even if these alternatives prove more difficult or more expensive." *Schmidt*, 94 Mich App at 732. In other words, an easement will not be created by necessity unless the property is "landlocked." *Forge v Smith*, 458 Mich 198, 211 n 38; 580 NW2d 876 (1998).

In this case, the undisputed facts show that plaintiff's property is not landlocked, but in fact directly borders Wildwood Road. Clearly, plaintiff can access the subject property from a public road without ever stepping foot on another's property. See *Goodman v Brenner*, 219 Mich 55, 59; 188 NW 377 (1922). While plaintiff contends that the building on its property blocks vehicular access to the parking lot behind the building, this argument for more expansive access to the property is one of mere convenience and is insufficient to establish that the property is "landlocked." See *Forge*, 458 Mich at 211 n 38. See also *Kahn-Reiss, Inc v Detroit & N S & L Ass'n*, 59 Mich App 1, 13; 228 NW2d 816 (1975), overruled in part on other grounds *Schmidt*, 94 Mich App at 735. Likewise, while plaintiff complains that efforts to alter the property and the building to allow for more access will cause expense and perhaps even zoning related difficulties, these types of expenses and difficulties do not evince the *strict* necessity required for creating an easement by necessity through defendant's property. See *Schmidt*, 94 Mich App at 732. In short, because Parcel C is indisputably not landlocked, plaintiff's claim for an easement by necessity must fail.

## III. PRESCRIPTIVE EASEMENT

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Higgins Lake Prop Owners Assoc v Gerrish Twp*, 255 Mich App 83, 118; 662 NW2d 387 (2003). For purposes of fulfilling the statutory period, "[a] party may 'tack' on the possessory periods of predecessors in interest to achieve this fifteen-year period by showing privity of estate." *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001). "The plaintiff bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010).

Relevant to the parties' arguments in this case, to say that the use of the property must be "adverse" or "hostile" "does not imply ill will." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 681; 619 NW2d 725 (2000) (citation omitted). Instead, "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." *Id.* Adverse use of another's property may be shown in two different ways:

> In the first, a person begins using property without the consent or authority of the owner and acquires a servitude if the use continues for the prescriptive period and the other requirements . . . are met. *In the second situation, people try to create a servitude but fail, initially because they do not fully articulate their intent* or

*Charles A Murray Trust*, 303 Mich App at 42; *Schmidt*, 94 Mich App at 731. However, plaintiff has brought a claim for an easement by necessity, which requires a showing of strict necessity. *Charles A Murray Trust*, 303 Mich App at 45.

reduce their agreement to writing, or because they fail to comply with some other formal requirement imposed in the jurisdiction. *If they proceed to act as though they have been successful in creating the servitude, and continue to do so for the prescriptive period, the servitude is created by prescription if the other requirements . . . are met.* In this second situation, prescription performs a title-curing function. [*Id.* at 684-685 (citation omitted) (emphasis in *Plymouth*).]

In other words, "an intended but imperfect express easement may establish a prescriptive easement" and "such use satisfies the hostile- or adverse-use element of a prescriptive easement." *Mulcahy*, 276 Mich App at 702. However, notably, "[i]t is well established that ' "[o]ne cannot have an easement in one's own land." ' " *Penrose* 308 Mich App at 150, quoting *von Meding v Strahl*, 319 Mich 598, 610; 30 NW2d 363 (1948). A "unity of fee" between the dominant and servient estate extinguishes an easement. *Odoi v White*, 342 Mich 573, 576; 70 NW2d 709 (1955).

In this case, the purported servient estate is the 50-foot access and the dominant estate is Parcel C. Plaintiff contends that, through use of the 50-foot access, Dario, as the most recent owner of Parcel C, obtained a prescriptive easement on the 50-foot access and that this resulting easement is appurtenant to Parcel C. The most obvious flaw in this argument is that both the 50-foot access and Parcel C were undisputedly owned by Dario since 1988. As the owner of the 50-foot access, Dario had every legal right to use the property, and there was no hostile or adverse use. In other words, there was a clear unity of fee between the owner of Parcel C and the 50-foot access that precludes the conclusion that Dario, as the owner of Parcel C, held an easement on the 50-foot access. See *Penrose* 308 Mich App at 150.

Plaintiff's argument to the contrary rests on the misguided premise that the 50-foot access was not part of Parcel C, but was in actuality part of the adjoining property, which was owned jointly by Dario and Angelo. To support this argument, plaintiff notes that Angelo and Dario originally owned the 50-foot access, and plaintiff contends that the various deeds conveying the 50-foot access as part of Parcel C were not a transfer of ownership in the 50-foot access but in actuality a failed attempt to create an easement for Parcel C over the 50-foot access. Thus, according to plaintiff, there was no unity of fee because Dario and Angelo jointly owned the 50-foot access while Angelo had no interest in Parcel C. Further, based on the contention that the deeds did not transfer ownership of the 50-foot access, plaintiff contends that the deeds represent an intended but imperfect express easement that satisfies the hostile- or adverse-use element of a prescriptive easement. See *Mulcahy*, 276 Mich App at 702.

We see no basis for plaintiff's arguments in the unambiguous language of the deeds at issue. See *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 216; 731 NW2d 472 (2007) ("The general rule is that courts will follow the plain language in a deed in which there is no ambiguity.") (citation omitted). Quite simply, there is no mention whatsoever of an easement in any of the deeds in Dario's chain of title and not the slightest indication that the parties in question intended to create an easement. Instead, beginning with the 1983 deed transferring ownership from Dario and Angelo to Dario and his wife, the 50-foot access is indisputably contained in the description of the 1.4 acres of property to be transferred; and, the deeds make no distinction between the transfer of Parcel C and the 50-foot access. Adhering to the plain language of the various quitclaim and warranty deeds, the only conclusion to be reached is that

the respective transferors conveyed their complete interest in Parcel C *and* the 50-foot access to the respective transferees. See *Eastbrook Homes, Inc v Treasury Dep't*, 296 Mich App 336, 349; 820 NW2d 242 (2012). Thus, since 1988 Dario has been the owner in fee simple of the entire bundle of rights pertaining to Parcel C and the 50-foot access. *Id.* at 348. In short, the 50-foot access did not belong jointly to Dario and Angelo as part of the adjoining property; rather, beginning with the transfer in 1983, the 50-foot access belonged to the respective owner/owners of Parcel C.[5]

Given the unambiguous transfer of the 50-foot access as a fee simple, there is no basis for supposing that the parties intended, but failed, to create an easement for Parcel C over the 50-foot access.[6] Thus, there is no intended but imperfect express easement to give rise to a claim for a prescriptive easement. See *Mulcahy*, 276 Mich App at 702. Rather, because at all relevant times the 50-foot access and Parcel C have been owned by the same person or persons, there has been a unity of fee between the servient and dominant estates which prevents the creation of a prescriptive easement over the 50-foot access. As noted, "[o]ne cannot have an easement in one's own land." *Penrose*, 308 Mich App at 150 (citation and quotation marks omitted). Consequently, plaintiff cannot show a prescriptive use of the 50-foot access for the requisite timeframe and plaintiff's claim for a prescriptive easement must fail.[7]

---

[5] The deeds relating to Dario's ownership of Parcel C are clear and undisputedly include the 50-foot access in the description of the property to be transferred. The only confusion in this case is occasioned by the property descriptions associated with the tax identification numbers and the fact that, despite the transfers of ownership, the 50-foot access was apparently never included in the tax identification number assigned to Parcel C but instead remained under the tax numbers assigned to the adjoining property. The reasons for this oversight are not clear; but, in any event, we are unaware of any authority that would allow property tax identification numbers to control the property rights to the 50-foot access in a manner contrary to unambiguous deeds. See generally *In re Rudell Estate*, 286 Mich App 391, 410; 780 NW2d 884 (2009).

[6] Plaintiff fails to provide any analysis of the deeds in question that would suggest they created an easement over the 50-foot access as opposed to transferring a fee simple. Moreover, plaintiff's argument on appeal is inconsistent and confusing because plaintiff in fact concedes that "[e]ach and every deed executed by [Dario] regarding [Parcel C] clearly and unambiguously provides a legal description which includes the fifty-foot access driveway in the deed as belonging to [Parcel C]." Indeed, plaintiff suggests that the 50-foot access "more likely actually belong[s]" to Parcel C and plaintiff queries why the 50-foot access was not included in the deed given to plaintiff as a result of the sheriff's sale. Despite any discrepancy in the tax records as compared to Dario's deed for the property, the fact remains that plaintiff did not purchase the 50-foot access. That plaintiff now wishes the sale had included the 50-foot access does not entitle plaintiff to ownership or use of the 50-foot access.

[7] For the first time on appeal, defendant argues that the tax forfeiture proceedings worked to extinguish any potential easement. Specifically, defendant argues that, under MCL 211.78k(5)(e), any easement that existed was extinguished when the property was subject to tax

-6-

Affirmed in part, reversed in part, and remanded for entry of summary disposition in favor of defendant with respect to plaintiff's claims for an easement by necessity and a prescriptive easement. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

---

foreclosure and sale. Having determined that plaintiff's easement claims are without merit, we need not reach this issue.