# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHAEL MATICKA and EDWARD
MATICKA, Co-Trustees of the ALETHA
MATICKA TRUST, THOMAS AXTELL, JOYCE
AXTELL, CHARLES RUSSIAN, and REUSHAN
RUSSIAN,

          Plaintiffs-Appellees,

v

MARTIN J. WISSMUELLER, DONNA M.
WISSMUELLER, MICHAEL MCGUIRE,
RANDY E. CRIPE, ROBERTA L. CRIPE,
MICHAEL CLARK, Trustee of the NORMA M.
HALL TRUST,

          Defendants-Appellants.

UNPUBLISHED
January 24, 2017

No. 329723
Midland Circuit Court
LC No. 12-008689-CH

---

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Defendants appeal by right the order of the circuit court granting plaintiffs a prescriptive easement and implied easement by quasi-easement to traverse defendants' privately owned road. We affirm.

## I. FACTS

The properties involved in this dispute extend into a popular recreational lake in mid-Michigan, which, in its undeveloped state, was entirely owned by Wolverine Power Company. In 1967, Wolverine conveyed a small parcel near the tip of the peninsula to Lionel and Ruth Dancer. In 1990, Ruth Dancer, surviving Lionel Dancer, conveyed that property to Richard and Kathleen Wildey. The Wildeys then conveyed the property to Thomas and Joyce Axtell in 1993 via a land contract completed in 1994. In 1968, Wolverine conveyed the remaining portion of the peninsula to Aletha Maticka via a land contract completed in 1987.

In 1978, Aletha Maticka conveyed a tract encompassing what appears to be the entire half of the peninsula abutting the mainland to David Cribbins via a land contract completed in 1989. In 1993, Cribbins conveyed the entirety of this property to Witte-Gay Design, built homes on the property and divided the land into parcels, owned at the time of trial by Martin and Donna

-1-

Wissmueller, Warren Michael McGuire, Randy and Roberta Cripe, and the Norma M. Hall Trust. The owners of the parcels entered into an agreement for a perpetual easement over their properties in the form of a road and, pursuant to this agreement, an asphalt driveway known as Little Canal Drive was constructed in 1993.[1] This driveway runs through defendants' properties ending short of the Maticka Trust property.

In 1986, Aletha Maticka conveyed a parcel of her remaining property to Charles and Reushan Russian by land contract, completed in 1997. Aletha Maticka remained the owner of a parcel in the middle of the peninsula and a second, smaller, parcel at the tip of the peninsula until her death shortly before trial. The property owned by Aletha Maticka was thereafter transferred to the Aletha M. Maticka Living Trust, administered by her two sons, Michael Maticka and Edward Maticka.

The resulting parcels, save for the parcel owned by the Maticka Trust at the tip of the peninsula, are relatively rectangular with waterfront on two opposing sides and abutting neighboring land on the remaining two. All properties remained owned by the resulting parties aforementioned at the time of trial.

At a bench trial, plaintiffs all testified that before the private driveway was installed on the property now owned by defendants, there was a two-track road beginning where the peninsula meets the mainland and extending halfway onto the Maticka property. At that point, the path narrowed to a walking path that ran over the property now owned by the Russians and the Axtells on the far end of the peninsula. Defendants, as purchasers subsequent to the initial installation of the private driveway, could provide no testimony relevant to the state of the two-track before they purchased their property. Defendants did testify, however, that no portion of the trail beyond the end of the paved driveway was navigable by vehicle until the Matickas widened the path sometime after the driveway was paved.

The Maticka sons testified that their family drove a vehicle over the two-track regularly between 1967 when their mother purchased the property and 2010. Charles Russian testified that he joined this use in 1986 when he became a possessor of land on the peninsula and that he would additionally drive a tractor across Little Canal Drive a few times every year to retrieve equipment he stored on his property. The Axtells testified that they began visiting the peninsula when they moved to the area in 1987 and continued their visits after they purchased their currently-owned property on the peninsula in 1993. According to the Axtells, they would walk or drive to their property weekly until they moved to Florida in 2003.[2]

---

[1] The defendants stated that the base layer and first layer of asphalt were completed by Witte-Gay but that Witte-Gay refused to complete the second layer of asphalt, even though ordered by a court to do so. The defendants, collectively, ended up paying for the second layer.

[2] The Axtells, although living primarily out-of-state, still owned the property on the peninsula at the time of trial.

Plaintiffs, although being unable to pinpoint a relevant date, stated that Norma Hall and her predecessor in interest, Bill Phillips, told them that they had no problem with their use of the driveway. This sentiment was apparently not shared by all the defendants and, apparently with Hall's permission, a barrier was erected at the end of Little Canal Drive in 2010 in the form of a set of PVC pillars filled with concrete, the center posts of which are padlocked and removable by key so that a car may pass through the barrier. Plaintiffs were not given a key to this barrier, and defendants were not willing to give them a key.

After a bench trial, the trial court granted plaintiffs a prescriptive easement and implied easement by quasi-easement to traverse the private driveway to access their peninsula properties, and ordered the costs associated with the maintenance or improvements to the current section of the private driveway to be shared by all owners of property on the peninsula. The trial court denied defendants any restitution for the installation costs of the driveway and ordered plaintiffs, solely, to bear any costs of extending the driveway.

## II. ANALYSIS

"An easement is the right to use the land of another for a specified purpose." *Schadewald v Brule*, 225 Mich App 26, 35; 570 NW2d 788 (1997).

We review de novo equitable actions concerning easements but we review the trial court's findings of fact for clear error. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007); *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). "The extent of a party's right under an easement is a question of fact." *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998). "A finding is clearly erroneous if the appellate court is left with a definite and firm conviction that a mistake has been made." *Charter Twp of Ypsilanti v Gen Motors Corp*, 201 Mich App 128, 133; 506 NW2d 556 (1993).

### A. QUASI-EASEMENT

Defendants first argument on appeal is that the trial court erred by granting plaintiffs an implied easement by quasi-easement over the private driveway. "An implied easement may arise in essentially two ways: (1) an easement by necessity and (2) an easement implied from a quasi-easement." *Charles A Murray Trust v Futrell*, 303 Mich App 28, 41; 840 NW2d 775 (2013) (internal quotation marks and citation omitted). A party asserting an implied easement by quasi-easement must show " '(1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits.' " *Id.* at 42, quoting *Schmidt v Eger*, 94 Mich App 728, 731; 289 NW2d 851 (1980).

Although the servitude involved in a quasi-easement must arise during a period of unified title, "an easement cannot exist over one part of a person's land in favor of another part when both parts remain in that person's possession." *Schmidt*, 94 Mich App at 737. Therefore, the key inquiry under the first element is whether the servitude existed at the date of severance of the parcel. *Id*. In this case, the trial court received testimony that at the time Aletha Maticka owned the entirety of defendants' property on the peninsula, a two-track road ran from the mainland

across what is now defendants' respective parcels and ended in the middle of a parcel now retained by the Matickas. Accordingly, plaintiffs have proved the first element.

Defendants' argument on this issue focuses on the continuity element. Defendants argue that under this Court's decision in *Murray Trust*, 303 Mich App at 42, a way at issue is not one of continuous use because the use consists of periodic human activity.[3] In that case, this Court was called upon to decide whether a 1934 decree granting an easement to the parties' predecessors did so through an easement by implication or an easement by necessity. *Id*. at 41. This Court concluded that the 1934 decree granted the parties' predecessors an easement by necessity, because, in part, "*at the time the trial court issued its decree in 1934*, the law in Michigan was that a right of way is not a continuous easement for purposes of establishing an easement implied from a quasi-easement." *Id*. at 43-44 (emphasis added). This Court ultimately determined that the *Murray Trust* plaintiffs were no longer entitled to an easement by necessity because strict necessity no longer existed for that easement. *Id*. at 56-57.

As this Court's statement in *Murray Trust* suggests, periodic human activity alone is no longer necessarily deemed insufficient to establish continuity for purposes of an implied easement. In *Rannels v Marx*, 357 Mich 453; 98 NW2d 583 (1959), our Supreme Court was called upon to determine whether an implied easement could be granted over a common driveway allowing both the plaintiff and the defendant access to their respective garages. The Court found that there was an "obvious easement" in that case, reiterating the long-standing principle that "when the owner of an entire estate makes one part of it visibly dependent for the means of access upon another, and creates a way for its benefit over the other, and then grants the dependent part, the other part becomes subservient thereto, and the way constitutes an" implied easement by quasi-easement. *Id.* at 457-458 (citation omitted). The Court thus recognized a driveway could be the subject of an implied easement.

In this case, although the driveway at issue did not extend onto the Axtells' property, because that property is at the far end of the peninsula, there was no other means of access to it, except across the water. Further, Thomas Axtell testified that he drove across the road in 1967 or 1968, around the time Wolverine severed that property. The trial court heard testimony that the two-track remained in use until it was paved and became Little Canal Drive, well after the defendants' property was severed from plaintiffs' property. The Matickas testified to extensive use of the driveway from 1967 until 2010, when plaintiffs erected the barrier. The Russians testified to extensive use throughout their ownership of their peninsula property, and Axtell testified that he traversed the driveway by vehicle as early as 1967, when his property was severed by Wolverine. Additionally, the record is replete with examples of parties on both sides of this dispute traversing the path across both defendants' and plaintiffs' properties before and

---

[3] Our Supreme Court has distinguished a discontinuous easement, as "one the use of which can only be by the interference of man," from a continuous easement, as one "used continually with the intervention of man," e.g., "a drain or sewer." *Zemon v Netzorg*, 247 Mich 563, 565; 226 NW 242 (1929).

after the installation of Little Canal Drive, by both vehicle and foot. Accordingly, we find plaintiffs very sufficiently proved the continuity element.

Regarding the final element, we note that determining reasonable necessity for purposes of an implied easement requires evaluating the individual circumstances presented, with attention to the "effort and expense" the claimed easement and alternatives to it would impose on the parties. *Schmidt*, 94 Mich App at 735. In this case, plaintiffs' property is located on a peninsula extending into a lake and abutting defendants' property on the other. These facts are such that plaintiffs have proved reasonable necessity for an easement over Little Canal Drive.

In sum, because plaintiffs have met their burden in proving all necessary elements, we conclude that the trial court did not err by granting plaintiffs an implied easement by quasi-easement over the private driveway.

## B. PRESCRIPTIVE EASEMENT

Defendants next appeal the trial courts grant of a prescriptive easement to plaintiffs. We review de novo equitable actions concerning easement and the trial court's findings of fact for clear error. *Mulcahy*, 276 Mich App at 698; *Chapdelaine*, 247 Mich App at 169.

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). A prescriptive easement " 'grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement.' " *Id*. (citation omitted).

A plaintiff seeking a prescriptive easement "bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). In this case, the trial court stated that "[t]he burden of proof in a case involving the creation of an easement by prescription is on the plaintiff, but it shifts to the defendant once the plaintiff has made a sufficient showing of use in excess of the prescriptive period." The trial court then examined the amount of evidence defendants presented before concluding that they had presented too little evidence to show that the use was permissive. Given the totality of the court's analysis, we conclude that when the trial court spoke of the "burden of proof," it was actually trying to explain that as of that point in its analysis, the burden of producing evidence had shifted to the defendants. See *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985) ("There are two aspects of the 'burden of proof'—the 'burden of persuasion' and the 'burden of going forward with the evidence.' The latter burden may shift several times during the trial, whereas the burden of persuasion generally remains with the plaintiff.").

Nonetheless, the trial court stated that "there had been use of the access to the peninsula property by Plaintiffs, and their predecessors in interest, well beyond the fifteen year time frame, therefore a presumption of a grant of easement exists and the servient estates have the burden of proof to show it was permissive use." Because, under our Supreme Court's jurisprudence, "[o]nce [the] plaintiffs presented evidence that they had used the disputed land for over fifty years, the burden of producing evidence shifted to [the] defendants to establish that [the]

plaintiffs' use was permissive." *Widmayer*, 422 Mich at 290. Thus the trial court's characterization of the burden of production was erroneous. Nevertheless, the first time the trial court mentioned burden shifting was in its opinion, after the all of the evidence had been presented. Because a correct application of the presumption relates only to the burden of production, and "[t]he burden of proving a prescriptive easement remained . . . with plaintiffs," *id*. at 289-290, the error was harmless.

## 1. ADVERSE

Defendants claim that both Norma Hall and her predecessor, Bill Phillips, granted plaintiffs permission to use the driveway during the approximately 17 years immediately preceding litigation, i.e., from the development of Little Canal Drive and defendants' homes around 1993 until 2010, when the barrier was installed. However, the record indicates that defendants exercised control over the driveway jointly, but not severally, at this time. Accordingly, even assuming that the lack of an objection is the equivalent of an affirmative grant of permission, neither Phillips nor Hall had the authority to grant permission to use the driveway. Therefore, plaintiffs' use of the driveway for the roughly 17 years between the installation of Little Canal Drive and the barrier's installation was adverse.

## 2. OPEN AND NOTORIOUS

Defendants do not contend that they did not have knowledge of plaintiffs' use of the driveway. Instead, defendants argue that the wild and unenclosed nature of their properties mandated that plaintiffs provide them with notice that they were claiming an affirmative right to use the driveway. The record indicates that the property was undeveloped before 1993. But thereafter, the land was developed; homes were built, and Little Canal Drive was paved. The plaintiffs' continued use was clearly open and notorious.

## 3. CONTINUOUS USE FOR THE STATUTORY PERIOD

Defendants argue that plaintiffs' use of Little Canal Drive was not continuous for 15 years. Our Supreme Court clarified this requirement in *von Meding v Strahl*, 319 Mich 598, 613-614; 30 NW2d 363 (1948), stating that whether a use is continuous

> can be stated only with reference to the nature and character of the right claimed. An omission to use when not needed does not disprove a continuity of use, shown by using it when needed, for it is not required that a person shall use the easement every day for the prescriptive period. It simply means that he shall exercise the right more or less frequently, according to the nature of the use to which its enjoyment may be applied. [Internal quotation marks and citation omitted.]

Although the record in this case shows that the Axtells did not purchase their property until 1993, the evidence is that the Axtells began walking the two-track regularly in 1987, and continued to do so on a weekly basis during the summer months until they moved to Florida sixteen years later. The record also shows that the Axtells would take a motor vehicle to the property "quite a few times," although much less frequently than travelling to it on foot. Because this property is currently undeveloped recreational land in close proximity to their

developed land, the Axtells have shown sufficient vehicular use to constitute continuous use for the statutory period, which was fulfilled sometime in 2002. Consequently, we agree that the Axtells sufficiently proved a prescriptive easement over the private driveway.

Additionally, the Matickas and Russians have proved continuous use from 1993 until 2010 and are therefore entitled to a prescriptive easement. Both the Matickas and Charles Russian testified that they would drive a motorized vehicle regularly over Little Canal Drive to reach their properties, and no evidence of any period of non-use was shown. Even though this use may not have been daily or even weekly, seasonal vehicular traffic across a driveway to access undeveloped property is a use commensurate with the enjoyment of that property and sufficient to show continuity.

For these reasons, we conclude that the trial court did not err by granting plaintiffs a prescriptive easement.

## C. SCOPE OF THE EASEMENT

Alternatively, defendants argue that if plaintiffs are entitled to an easement, it should have been limited to foot traffic. "An easement is the right to use the land of another for a specified purpose." *Schadewald*, 225 Mich App at 35. "A prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment." *Heydon v MediaOne*, 275 Mich App 267, 271; 739 NW2d 373 (2007) (quotation marks and citation omitted). "One who holds a prescriptive easement is allowed to do such acts as are necessary to make effective the enjoyment of the easement unless the burden on the servient estate is unreasonably increased; the scope of the privilege is determined largely by what is reasonable under the circumstances." *Id*.

Regarding the scope of a quasi-easement, our Supreme Court adopted a similar standard in *Rannels*, 357 Mich at 456-457 (quotation marks and citations omitted):

> Where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.

> * * *

> The parties are presumed to have contracted with reference to the condition of the property at the time of the sale, and to have intended that the grantee should have the means of using the property granted, and, therefore, that

he should have such rights and privileges in or over the premises remaining in the grantor as might be requisite for that purpose. . . .

Plaintiffs testified that they regularly drove vehicles down the same path across what is now defendants' properties before, and continuing after, the installation of Little Canal Drive. This testimony is only rebutted by defendants' testimony that beyond Little Canal Drive there existed only a footpath before the Maticka sons widened the path after the driveway was paved. Defendants provide no evidence suggesting that the area occupied by Little Canal Drive was not wide enough for a vehicle to navigate or refuting plaintiffs' testimony that vehicles had been driven onto the Maticka property since the late 1960s. That plaintiffs may have widened the portion of the path existing on their own property, allowing them greater navigability once there, does not change the fact that plaintiffs have driven across what is now Little Canal Drive to access their properties since the late 1960s.

For these reasons, the trial court did not err by declining to limit plaintiffs' easement to foot traffic.

## D. UNJUST ENRICHMENT

Lastly, defendants argue the trial court erred by declining to order plaintiffs to compensate them for the use of the two-track, which they assert they constructed and which increased the value of plaintiffs' properties. Defendants argue that not to place a financial responsibility on plaintiffs with respect to repairing any damage caused by plaintiffs or to cover the cost of any burden placed on the easement as a result of any extension of the driveway (for example, utility upgrades) would leave plaintiffs unjustly enriched. "[I]n order to establish a claim of unjust enrichment, [the party claiming unjust enrichment] must demonstrate: (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012). "Whether a claim for unjust enrichment can be maintained is a question of law that we review de novo." *Id.* at 22.

Defendants presented no evidence at trial regarding the cost to install the driveway or the value of the benefit conferred upon plaintiffs by way of opening their land to development. Further, defendants provided no evidence regarding any damage plaintiffs might cause (a speculative argument in any event) or that plaintiffs were going to extend the road and increase the utility service to the area. In fact, defendants never requested that the trial court rule on the apportionment of costs for damage to the driveway or expansion of utility costs. That the trial court did not rule in favor of defendants on a claim defendants never placed before it cannot form the basis of error on appeal. See *Garbarino v Lee C Miller Co*, 330 Mich 688, 692; 48 NW2d 217 (1951) (explaining that there was no record evidence "the trial judge passed upon any of the controverted issues," the issues were not properly before the Court).

We affirm. As the prevailing parties, plaintiffs may tax costs pursuant to MCR 7.219.

/s/ Peter D. O'Connell
/s/ Jane E. Markey