KOLLER v JORGENSEN

1. EASEMENTS—IMPLIED EASEMENT—INTENT OF PARTIES—SEVERANCE
OF INTEREST.

Creation of an implied easement may come about through sever-
ance of a single possessory interest; an implied easement may
arise as an inference of the intention of the parties making the
conveyance; all circumstances of the conveyance should be
considered.

2. EASEMENTS—IMPLIED EASEMENT—REQUIREMENTS.

The three requirements for establishment of an easement by
implication are: (1) apparentness, (2) continuity, and (3) neces-
sity.

3. EASEMENTS—IMPLIED EASEMENT—NECESSITY.

Necessity for an easement to provide access to a lake shore for
owners of back lots was established where the largest portion of
the value of the lots resulted from their access to the lake and
where most of the back lot owners were out-of-town owners
with established summer homes on the lots and without access
to the lake the use and value of the lots would be substantially
reduced.

4. EASEMENTS—LIMITATION OF EASEMENT—INTENT OF PARTIES.

A trial court erred in limiting an easement across a 100-foot-wide
lot to a 25-foot-wide strip where the intent of all parties
involved was clearly to provide access to a beach by way of the
entire lot.

5. EVIDENCE—DEEDS—QUIT CLAIM DEED—PAROL EVIDENCE—INTEREST
CONVEYED.

Parol evidence is properly allowed for the purpose of explaining

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur 2d, Easements and Licenses §§ 20–23.
[2, 3] 25 Am Jur 2d, Easements and Licenses §§ 24–38.
  Easements: Way by necessity where property is accessible by navi-
  gable water. 9 ALR3d 600.
[4] 25 Am Jur 2d, Easements and Licenses § 78.
[5] 23 Am Jur 2d, Deeds §§ 292, 293.
  25 Am Jur 2d, Easements and Licenses § 75.

exactly what interest is received by a party who purchases land by way of a quit claim deed.

Appeal from Manistee, Charles A. Wickens, J. Submitted June 10, 1977, at Grand Rapids. (Docket No. 30156.) Decided July 7, 1977. Leave to appeal applied for.

Complaint by Robert D. Koller, Sue A. Koller, and others against John D. Jorgensen, Carol L. Jorgensen and Jack Clement seeking to enjoin defendants from constructing a residence on defendants' land. Injunction granted as to a portion of the land involved. Defendants Jorgensen appeal. Affirmed with modification.

*Jennings & DeVries,* for plaintiffs.

*John E. Hart (Clark, Klein, Winter, Parsons & Prewitt,* by *H. William Butler,* of counsel), for defendants Jorgensen.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and M. B. BREIGHNER,* JJ.

D. E. HOLBROOK, J. Defendants John D. and Carol L. Jorgensen, husband and wife, appeal as of right from a July 30, 1976, judgment holding that an encumbrance in the nature of an easement existed in a 25-foot wide strip of land running the length of a piece of property they owned. Plaintiffs instituted this action on November 14, 1975, by seeking an injunction preventing defendants from building a residence on defendants' property because it would impair plaintiffs' use of the land as access from their property to Lake Michigan, thereby depriving plaintiffs of the enjoyment of their property as well as lowering the value of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

their property. Plaintiffs claim that they had a right to use lot 16, the subject property herein, as an access lot to the lake because of various representations, recorded documents and on the basis of prior use. A nonjury trial was held on May 13, 1976. The court issued an opinion on June 22, 1976, and the judgment implementing that opinion was rendered on July 30, 1976.

This dispute concerns lot number 16 located in the Red Apple Beach Shores Subdivision. The lots in the subdivision, including lot number 16, are about 100 feet wide and have frontage on Lake Michigan. This subdivision was platted on October 29, 1954. In 1956 a subdivision known as Red Apple Beach Shores No. 1 was platted. These are the back lots without water frontage which correspond to the front lots known as Red Apple Beach Shores Subdivision. Red Apple Beach Shores No. 1 was conveyed by the Porter-Mulder Land Company, developer of Red Apple Beach Shores, to several of its stockholders by warranty deed. This conveyance also included lot number 16. These stockholders subsequently sold lots in Red Apple Beach No. 1 through the Porter-Mulder real estate agent. Included in the sales campaign was reference to lot number 16 as an access lot for the future back lot owners. Sales were quickly consummated. Although none of the deeds to the lots in Red Apple Beach No. 1 expressly referred to lot 16, each purchaser testifying on the record herein indicated that the existence of access lot number 16 was a significant factor in the purchase of their lot. At least one purchaser was concerned about the access lot. On July 7, 1959, Gerald Derks, as president of Porter-Mulder Land Company, wrote a letter to Ray and Carlyn Landsberg which indicated that:

"We hereby advise that lot #16 of Plat of Red Apple Beach Shores has been reserved for the use of the lot owners of that plat and of Plat of Red Apple Beach Shores #1 as access to the swimming beach on Lake Michigan. The manner in which this will be placed on record has not been definitely established but this memorandum will serve to protect your interest."

This letter was recorded on July 9, 1959, despite the lack of notarization. The record indicates that this letter was written and recorded for the benefit of all back lot owners. Another affidavit of Gerald Derks dated September 5, 1972, and recorded on September 11, 1972, attempted to more clearly establish that lot number 16 was an access lot for the benefit of the back lot owners. This affidavit specifically referred to the 1959 letter to the Landsbergs.

On July 31, 1966, several of the lake front property owners formed the Red Apple Association. Back lot (Red Apple Beach No. 1) owners were permitted to join. Lot 16 was of particular concern to the association. The association desired to protect lot 16 and decided to form a nonprofit corporation and buy the lot to protect it. After discussions with Porter-Mulder Land Company, the association offered to buy the lot for $1. Comparable lots at that time were selling for approximately $4,000 to $5,000. Finally a price of $500 was agreed upon and the lot was conveyed by warranty deed on October 3, 1967. The deed was recorded on November 13, 1967. However, no reference was made to the fact that lot 16 was an access lot.

Later, apparently the composition and goals of the association changed. It became composed largely of lake front owners (Red Apple Beach Shores). The association, for some unknown rea-

son, decided to sell lot 16. Defendants made an offer to purchase the property. At a meeting of the association the offer was approved by a vote of 27 to 2. Only two back lot members were present at the meeting and both voted to disapprove the offer. The lot was conveyed on April 15, 1974, by quit claim deed for $2,500. At that time the land had a value of $17,000 to $18,000. The purchasers, defendants herein, were aware of the impressed access use of lot 16 and apparently this risk was the reason for the amount of the bid. The trial court expressly found that:

"The facts further show that the defendants and their predecessor in title were well aware when they purchased that representations had been made that this lot was to be used by lot owners in the rear for the purpose of access to Lake Michigan."

It should also be noted that defendants stand to lose nothing should building be prohibited on this lot. The record indicates that the association will take the lot back.

If ever the equities in a case were unbalanced, this is the case. Defendants are the antithesis of the good faith purchaser. Defendants were fully aware of the fact that lot 16 had been used for a number of years and was fully intended to be used as an access lot to lake Michigan for the benefit of back lot owners. Defendants paid $2,500 for a piece of property worth at least $17,000 or $18,000, or as the trial court noted they paid "an insignificant consideration compared to its actual value". Finally, it appears that if defendants cannot build a home on the property then their money will be refunded and the property will revert to the association. In balancing equities defendants have failed to even budge the scale.

We find that the trial court was correct in finding that defendants should not do anything that will interfere with the access that plaintiffs have to Lake Michigan. Unfortunately, other than mentioning the relative equities the trial court did not elaborate on what legal basis plaintiffs' rights lie. However, the trial court properly found that plaintiffs have the right to use lot number 16 for access to Lake Michigan.

In the instant case, lot number 16 and the back lots (Red Apple Beach No. 1) were all held at the same time by a common grantor. An implied easement arose when the first back lot was sold, which promised access across lot 16 to Lake Michigan. It was clearly the intent of everyone involved to create such an interest and various steps were taken to protect that interest. In 5 Restatement Property, §§ 474–476, pp 2972–2989, it is expressly recognized that creation of an implied easement may come about through severance of a single possessory interest and that an implied easement arises as an inference of the intention of the parties making the conveyance. All circumstances of the conveyance should be considered. Herein, intention was clear from a view of the circumstances involved. It is unfortunate that the easement was not referred to in the deeds themselves. Nevertheless, everyone was well aware of the existence of this easement.

Recently this Court reiterated that there are three requirements necessary to establish an easement by implication. These are (1) apparentness (notice to the defendant), (2) continuity, and (3) necessity. *Wilson v Anglin,* 72 Mich App 212, 215; 249 NW2d 360 (1976). See *Covell v Bright,* 157 Mich 419; 122 NW 101 (1909). As in *Wilson* we find that two of the requirements are clearly met,

but difficulty arises in determining necessity. We depart from *Wilson* in that we find, on the facts herein, necessity was established sufficient to support the easement.

Herein these lots were used for resort residential vacation-type use. These lots were worth substantial sums of money due to their location. Most of the back lot owners were out-of-town owners who established summer homes at Apple Beach No. 1. Obviously, the largest portion of value of these lots results from their access to Lake Michigan. Without access to Lake Michigan their use and value would be substantially reduced. We find in this case, based on these facts, that plaintiffs have shown a necessity for this easement, without which their property would not be suitable for the purposes for which it was purchased.

We have also determined that the trial court's judgment should be modified. The clear intention of everyone involved was to provide access by way of the entire lot number 16. We recognize that the trial court was trying to accommodate all interests by limiting the easement to a 25-foot strip. Nevertheless, this is not the easement which had been created. Even the defendants recognized this, for in their brief, they state:

"Apparently, in an effort to arrive at some sort of an equitable compromise, the court concluded to reserve the north 25 feet of the 100 foot lot for a park.

"This conclusion is entirely untenable. If the Plaintiffs were correct, then the entire property should be 'a park for access to the Lake Michigan swimming beach.' If, on the other hand, no such park was created, then the court had no alternative but to determine that Lot 16 was limited to residential purposes and Defendants were entitled to build upon it. There is nothing in the record or any of the recorded documents or, for that matter, in any of the testimony adduced by any wit-

nesses called by the Plaintiffs which indicated an intent to establish less than the total of Lot 16 for a park. There were no standards by which the court could arbitrarily designate 25 feet."

We conclude that the easement granting the back lot owners access to Lake Michigan is not limited to 25 feet, but includes the entire lot number 16. We do not find this easement to be irreconcilable with the protective restrictions contained in the deeds. In fact, we find that such easement enhances and is consistent with the purposes for which those restrictions were adopted.

Defendants took title by way of quit claim deed and, therefore, it was proper for the court to allow parol evidence to explain exactly what defendants received. Such evidence did not contradict the deed, but was of importance in determining exactly what the deed did transfer. Testimony of all the witnesses who spoke on the matter indicated that lot number 16 contained an easement granting access rights to all back lot owners. Parol evidence herein clarified exactly what defendants received.

We affirm the trial court's finding that defendants should not be allowed to interfere with the access rights that plaintiffs have to Lake Michigan. We modify the judgment to extend those access rights to all of lot number 16. Costs to plaintiffs.