SCHMIDT v EGER

Docket No. 78-3817. Submitted October 4, 1979, at Detroit.—Decided January 9, 1980. Leave to appeal applied for.

Elmer R. Schmidt, doing business as R. C. Schmidt & Sons, leased a parcel of land to a corporation controlled by Frank L. Eger, June A. Eger, Roger P. Eger and Elizabeth Eger in 1968. A portion of the land was improved in 1969, including the installation of a ditch which drained adjoining land which was retained by Schmidt. In 1972, the Egers took title to the land they had been leasing. In 1973, the Egers announced their intention to grade the portion of the property which contained the ditch. Schmidt brought an action against the Egers seeking an injunction to prohibit the Egers from interfering with the drainage ditch. Defendants were granted an accelerated judgment which was reversed by the Court of Appeals, 69 Mich App 457 (1976). The matter was tried and the Macomb Circuit Court, William J. Beer, J., granted judgment in favor of the defendants. Plaintiff appeals, alleging that he has an implied easement in the drainage ditch, that the defendants are bound to accept the drainage from his land under a natural flow theory, and that the lease and deed contained general language conveying the land subject to reserved easements. *Held:*

1. The trial court erred by holding that the plaintiff was required to prove strict necessity in order that an easement may be implied. An implied easement requires proof of only a reasonable necessity, and the plaintiff sufficiently established such a reasonable necessity.

2. An implied easement also requires proof that the easement existed and was apparent at the time of severance of the estate. The time of severance is the date that the possessory interest

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Easements and License §§ 24, 27 *et seq.*
What constitutes unity of title or ownership sufficient for creation of easement by implication or way of necessity. 94 ALR3d 502.
[2] 25 Am Jur 2d, Easements and Licenses § 18.
[3] 25 Am Jur 2d, Easements and Licenses § 33.
[4] 25 Am Jur 2d, Easements and Licenses § 30.
[5] 25 Am Jur 2d, Easements and Licenses §§ 76, 87.

was transferred, which in this case was the date upon which the defendants obtained the leasehold. Because the ditch was constructed after that time, it was not apparent at the time of severance. Therefore, the plaintiff failed to establish an implied easement.

3. The owner of a lower estate is bound to accept the natural flow of water from the owner of an upper estate, but the owner of an upper estate may not require the owner of a lower estate to accept a greater than natural flow. In this case the plaintiff had developed his land in such a way as to greatly increase the runoff onto the defendants' land. Under these circumstances the trial court's ruling that the defendants were not obligated to accept the runoff was not erroneous.

4. The deed, which listed several specifically defined easements that were reserved to the plaintiff, did not mention the drainage ditch. Therefore, there was no express easement in the ditch.

Affirmed.

1. Easements — Implied Easements — Elements.

Three elements must be shown to establish an implied easement: (1) during the unity of title of an estate, a part of which has been severed, an apparently permanent and obvious servitude was imposed on° one part of the estate in favor of the other, (2) continuity, and (3) the easement is reasonably necessary for the fair enjoyment of the property it benefits.

2. Easements — Implied Easements — Burden of Proof.

A party asserting an implied easement has the burden of proving the claim by a preponderance of the evidence.

3. Easements — Implied Easements — Reasonable Necessity.

An easement which is implied from necessity requires that the easement be only reasonably, not strictly, necessary.

4. Easements — Implied Easements — Apparentness — Severance.

An implied easement must have been apparent at the time of severance of the land; the time of severance is the date on which the possessory interest was transferred, whether by conveyance or by lease.

5. Easements — Drainage — Natural Flow.

The owner of a lower or servient estate must accept surface water from an upper or dominant estate in its natural flow; however, the owner of the dominant estate may not require the

owner of the servient estate to accept a greater runoff by increasing or concentrating the flow.

*Casey, Cavanaugh & O'Neill,* for plaintiff.

*Rogensues, Hacker & Associates,* for defendants.

Before: T. M. Burns, P.J., and Bronson and R. M. Maher, JJ.

Per Curiam. Plaintiff appeals as of right the judgment of the trial court in favor of defendants denying the relief requested in plaintiff's complaint.

Plaintiff leased two lots of an industrial complex to a corporation controlled by the defendants on November 12, 1968. Plaintiff subsequently became the owner of a small area of property at the southern end of the two lots, and this property also became a part of the defendants' leasehold. In 1969, this new area was developed, a lawn established, and a ditch put in. This ditch carries water off other land owned by plaintiff and is the subject of the instant case. Testimony differed as to when it was first developed; plaintiff testified that the work done in 1969 was a modification of a ditch that had existed prior to the acquisition of the property to the south of the original two lots, although he had previously given answers to written interrogatories stating that the ditch was first put in simultaneously with the other improvements. Defendant Frank Eger testified that the ditch did not exist prior to the establishment of the leasehold, but that it was constructed after he commenced occupation.

A history of litigation between the parties commenced in 1972 when defendants' corporation brought suit seeking specific performance of an

option to purchase the property that was contained in the lease. A consent judgment was entered and defendants took title to the property. On October 9, 1973, defendants announced to plaintiff their intention to grade and level that portion of the property that contained the ditch, a manhole, access structures, and buried drain tile. Plaintiff filed suit seeking an injunction against the defendants prohibiting them from interfering with the drainage ditch. Accelerated judgment was granted to defendants, but this Court reversed and remanded for trial. *Schmidt v Eger,* 69 Mich App 457; 245 NW2d 90 (1976), *lv den* 399 Mich 867 (1977). At trial, plaintiff relied on three theories in support of his claim for an injunction. Judgment was for defendants and plaintiff has appealed as of right, raising claims of error in the trial court's application of each of his three theories.

## I.

Plaintiff claims the drainage ditch represents an easement by implied reservation. To establish an implied easement, three things must be shown: (1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits. *Harrison v Heald,* 360 Mich 203; 103 NW2d 348 (1960), *Rannels v Marx,* 357 Mich 453; 98 NW2d 583 (1959), *Koller v Jorgensen,* 76 Mich App 623, 628; 257 NW2d 192 (1977), *lv den* 402 Mich 843 (1977). The party asserting the easement has the burden of proving the claim by a preponderance of the evidence. *Kahn-Reiss, Inc v Detroit & Northern Savings & Loan Ass'n,* 59 Mich App 1, 12; 228 NW2d 816 (1975). The trial court found

that the continuity element was established, given the nature of drains, and we agree. *Waubun Beach Ass'n v Wilson,* 274 Mich 598, 606; 265 NW 474 (1936), *Bubser v Ranguette,* 269 Mich 388, 392-393; 257 NW 845 (1934), 2 Thompson on Real Property, § 354, p 344. Our discussion is limited to the remaining two elements.

A. *Necessity*

On the necessity element, the trial court held that plaintiff needed to establish that the easement was *strictly* necessary before it would be implied. We hold that this was error, and that plaintiff needed only to establish that the easement was *reasonably* necessary. We do note, however, that some confusion in this regard is justified, as Michigan law has been less than clear on the point and as easements by implication may arise under different circumstances.

An implied easement may arise in essentially two ways.[1] First, it can be implied from necessity. In this situation, an estate has been severed, leaving the dominant estate without a means of access. Before an easement will be implied in this situation, the party who would assert the easement must establish that it is strictly necessary for the enjoyment of the property. Mere convenience, or even reasonable necessity, will not be sufficient if there are alternative routes, even if these alternatives prove more difficult or more expensive. All implied easements are based on the presumed intent of the parties, but this sort is additionally supported by the public policy favoring the productive and beneficial enjoyment of property. Easements implied from necessity have been recognized

[1] See generally, 2 Thompson on Real Property, §§ 351-355, 362-364, pp 308-371, 410-446, Cribbet, Principles of the Law of Property, pp 335-340.

in Michigan as requiring a showing of strict necessity. *Waubun Beach Ass'n v Wilson, supra, Goodman v Brenner,* 219 Mich 55; 188 NW 377 (1922), *Moore v White,* 159 Mich 460; 124 NW 62 (1909), *Birch Forest Club v Rose,* 23 Mich App 492; 179 NW2d 39 (1970). This sort of implied easement is not dependent on the existence of any established route or quasi-easement prior to the severance of the estate by the common grantor; it is first established after the severance.

The easement with which we are involved in the instant case is of a different type, what Dean Cribbet refers to as easements implied from quasi-easements.[2] It requires that at the severance of an estate an obvious and apparently permanent servitude already exists over one part of the estate and in favor of the other. It also requires a showing of necessity, but whether that necessity needs to be "strict", or only "reasonable", traditionally has depended on whether the easement claimed was an implied *grant,* or an implied *reservation.* Aigler, Comment: *Real Property—Easements by Implication—Creation of Easements by Implied Reservations in Michigan,* 59 Mich L Rev 432 (1961).

It appears to be the position of a majority of jurisdictions that an implied grant of an easement requires only a showing of reasonable necessity, while an implied reservation of an easement in the grantor requires a showing of strict necessity. The difference seems based on the idea that a grantor will not be allowed to derogate from the grant by alleging to retain interests which the deed purports to convey.[3] Because the grantor is not al-

---

[2] See note 1, *supra.*

[3] An easement by implied grant is not, however, without a similar problem in that it amounts to a conveyance of an interest in land without the writing required by the statute of frauds. Courts have not generally concerned themselves with this point, perhaps viewing the

lowed to assert the reservation of an implied easement based on the existence of a pre-existing servitude or quasi-easement, the claim of an implied reservation must, under this view, proceed as if no servitude or quasi-easement existed, and requires a showing of strict necessity as in the case of an easement implied from necessity.

Several Michigan cases have adopted this position, and held that when an implied reservation is involved, as in the instant case, a showing of strict necessity is required. *Brown v Fuller,* 165 Mich 162; 130 NW 621 (1911), *Bubser v Ranguette, supra, von Meding v Strahl,* 319 Mich 598, 605-606; 30 NW2d 363 (1948), *Kahn-Reiss, Inc v Detroit & Northern Savings & Loan Ass'n, supra, Wilson v Anglin,* 72 Mich App 212; 249 NW2d 360 (1976). An apparent minority of jurisdictions hold that there is no difference between a grant and a reservation for the purposes of implying an easement from an existing servitude or quasi-easement, and that only reasonable necessity is required for both. Despite the holdings in the cases cited above, this seems to be the most recent position adopted by our Supreme Court. In *Harrison v Heald, supra,* the Supreme Court was faced with the question whether the rules governing easements by implied grant also controlled implied reservation of easements. The Court quoted language from *Rannels v Marx, supra,* which *Rannels* had in turn quoted from *Rischall v Bauchmann,* 132 Conn 637; 46 A2d 898; 165 ALR 559 (1946), and noted that the language used, including that referring to an element of reasonable necessity, applied equally to grants and reservations. The *Harrison* Court was criticized for relying on dicta

requirements for establishing an implied easement as stringent enough to satisfy the purposes of the statute.

rather than its own prior holdings in reaching this result, and alternatively for failing to adopt the new course after squarely addressing the issue.[4] While it is true that the Supreme Court in *Harrison* did not specifically direct itself to the precise issue of what quantum of necessity was to be required in cases of implied reservations, as opposed to implied grants, it is clear that it intended the same rules to apply to each. We thus view *Harrison* as controlling, and as requiring only a showing of reasonable necessity, regardless of whether a grant or reservation is sought to be implied. To the extent that post-*Harrison* decisions of this Court may be read to require a showing of strict necessity when an implied reservation is involved, it is our opinion that they were wrongly decided. See, *e.g., Wilson v Anglin, supra, Kahn-Reiss, Inc v Detroit & Northern Savings & Loan Ass'n, supra.*

Applying a test of reasonable necessity to the facts of the instant case, we hold plaintiff sufficiently established this element. The trial court found that the several alternative drainage plans open to the plaintiff would require considerable work. One of the expert witnesses who testified placed the cost of a new drainage system at between $30,000 and $35,000. Under the facts and circumstances of this case, the effort and expense were great enough for implication of the easement to be reasonably necessary.

---

[4] Aigler, Comment: *Real Property—Easements by Implication—Creation of Easements by Implied Reservations in Michigan,* 59 Mich L Rev 432 (1961).

The Court's response to this criticism in *Ketchel v Ketchel,* 367 Mich 53, 58; 116 NW2d 219 (1962), is of little help, first, because it seems to miss the point, and second, because it is difficult to tell whether *Ketchel* involved an implied grant or an implied reservation. The parties originally held the land jointly, and split it between themselves by exchanging quit-claim deeds to different halves of the property.

B. *Apparentness*

In order to establish his easement, plaintiff also needs to show that it was apparent at the date of severance. The testimony conflicted as to whether the drain existed prior to November 12, 1968, the date of the lease, but the trial court found that it did not, that it instead came into existence in 1969. The lease contained an option to purchase the property, and on June 22, 1973, the defendants purchased the property they had been leasing. Since the trial court held that the necessity element had not been established, it felt that it was unnecessary to decide the question of when severance took place, but remarked that if called upon to do so, the appropriate date of severance would have been the date of the lease. Since we reach a different result on the necessity element, we must decide the date of severance. If, as the trial court suggested, that date is the date of the lease, then plaintiff has failed to establish the element of apparentness since the drain was found to have first come into existence after the date of the lease. If, on the other hand, the plaintiff is right in asserting that severance did not take place until 1973 when defendants took title to the land, then the easement was apparent and plaintiff will have shown all the elements necessary to the establishment of an implied easement.

We have found no Michigan cases directly on point, but our analysis of the purpose of the severance requirement leads us to conclude that the appropriate date of severance is the date of the lease.

Simply put, a severance is required because it is legally impossible to have an "easement" in your own land. If a person owns two adjacent tracts of land and imposes a servitude on one tract for the

benefit of the other, there exists only a quasi-easement that may ripen into a full easement when one of the tracts is conveyed. A lease is a conveyance of property for a term, and while the grantor retains a reversionary interest in the land, the right to use and possess the land has passed to the lessee. It is for this reason that while an easement cannot exist over one part of a person's land in favor of another part when both parts remain in that person's possession, an easement may exist when one part is conveyed to a lessee. See *Powers v Harlow,* 53 Mich 507; 19 NW 257 (1884), 5 Restatement Property, § 475, p 2976 (Illustration 1). The Restatement's drafters, when addressing the issue of severance, wisely chose to speak in terms of the severance of a single *possessory interest.* 5 Restatement Property, § 474, pp 2972-2975. See *Koller v Jorgensen, supra,* 628. The lessor, having conveyed his possessory interest in a tract of land for a period of time, must establish his right to use an easement in the land conveyed in the manner generally provided for establishing easements. In the instant case the defendants took a possessory interest in the land in 1968. In 1973 they joined with this possessory interest all the other property interests in the land that the deed conveyed. Given the nature and purpose of the severance requirement, we hold that the date of severance cannot be placed in the middle of a continuous possessory interest, but must instead be placed at the point where the possessory interest first arose, which in this case is November 12, 1968, the date of the lease. Because the trial court found that the drain did not come into existence until 1969, we hold that it was not "apparent" as of the date of severance. Plaintiff thus failed to satisfy one of the necessary elements, and the trial

court did not err in holding that he failed to establish an implied easement.

## II.

Plaintiff also contends that the defendants are bound to accept water drainage from his lands under a natural flow theory. The trial court disagreed, and plaintiff now argues that the trial court's findings of fact and conclusions of law in this regard are not supported by the record.

It is clear that the owner of the lower or servient estate must accept surface water from the upper or dominant estate in its natural flow, and equally clear that the owner of the dominant estate may not require the owner of the servient estate to accept a greater runoff by increasing or concentrating the flow. *Bennett v Eaton County,* 340 Mich 330; 65 NW2d 794 (1954), *Cranson v Snyder,* 137 Mich 340; 100 NW 674 (1904), *Lewallen v City of Niles,* 86 Mich App 332; 272 NW2d 350 (1978). The testimony in the instant case indicated that as a result of the development of plaintiff's land, the water runoff onto defendants' land was greatly increased, perhaps as much as six times the natural flow. Under these circumstances, we see no reason to disturb the trial court's ruling. This is not an appropriate case for a natural flow theory.

## III.

Plaintiff's final argument that he has an easement because the lease and deed each contained general language conveying the property subject to easements reserved to the grantor is without merit. The deed listed several specifically defined easements that were reserved to the plaintiff, but

made no mention of the drain which is the subject of this appeal. There was no express easement in the drain as such, and, as noted above, plaintiff has failed to establish an implied easement.

Affirmed.