*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEGGY ZLATKIN AND SHARON ROSE
ZLATKIN,

Plaintiffs-Appellants,

v

CAROL SCHWEIHOFER AND LAWRENCE
SCHWEIHOFER,

Defendants-Appellees.

UNPUBLISHED
September 10, 2019

No. 345610
Gladwin Circuit Court
LC No. 17-009228-CH

Before: MURRAY, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In this property action, plaintiffs appeal as of right the trial court's order denying plaintiffs' request for declaration of an easement over defendants' property. We affirm.

## I. BACKGROUND

In 1994, Robyn and Jacqueline Huber purchased a 197-acre parcel of land at 2699 Dutcher Road in Gladwin County, Michigan. The 197-acre parcel was enclosed by Dutcher Road on its northern boundary and Butman Road on its eastern boundary. Hayfields composed the majority of the estate, and a single home sat on the northern half of the property. North of the house was a wooded, marshy area and a steep hill. For the majority of the time that the Hubers owned the estate, Robyn used the land for farming purposes, using Butman and Dutcher roads frequently to transport farming equipment. Robyn also moved farming equipment using a road he maintained that went over the wooded, hilly area behind their property.

On March 18, 2015, Robyn[1] hired Lapham Associates to survey a roughly 10-acre parcel of the 197-acre estate. The 10-acre parcel contained a trail that led from Dutcher Road to certain

---

[1] Because several persons relevant to this case share surnames, we will use first names in this opinion where doing so aids readability.

hayfields. At times, Robyn used this trail to transport his farming equipment; at other times, Robyn used the trail to visit the 10-acre parcel or for all-terrain vehicle use. In addition to delineating the boundaries of the 10-acre parcel, the Lapham Associates survey listed existing markers, such as a power pole and a corner post, and stated that the parcel was subject to "restrictions, reservations, easements, rights-of-way, zoning governmental regulations and matters visible, if any, upon or affecting said lands."

On April 17, 2015, Robyn sold the surveyed 10-acre parcel for $10,000 to his sister, defendant Carol Schweihofer, via a quitclaim deed. In pertinent part, the deed described the property as "Containing 10.11 acres and being subject to restrictions, reservations, easements, rights-of-way, zoning, and regulations." When Carol purchased the land, she and Robyn agreed that he would mow her lawn in return for being able to cut hay on her property. Later, on December 29, 2015, Carol conveyed her 10-acre parcel to herself and her husband, Lawrence, by way of a quitclaim deed. This deed, like the original, stated that the property was subject to easements.

On May 13, 2015, Robyn sold the remaining estate, 187 acres, to plaintiffs Peggy and Sharon Zlatkin on a land contract for $640,000. Plaintiffs used the land for farming purposes and primarily transported farming equipment using the trail on defendants' land. Plaintiffs also verbally agreed with Robyn to continue the arrangement between him and Carol. Under the agreement, plaintiffs cut hay on defendants' land in 2015 and 2016. The parties dispute whether plaintiffs cut Carol's lawn in 2015 and 2016. The parties agree, however, that plaintiffs did not cut Carol's lawn in 2017 after their lawn mower broke. In response, Carol posted no trespass signs on her land, prohibiting plaintiffs from accessing the trail. Consequently, plaintiffs hired Daniel Pommaville to survey the 10-acre parcel and take aerial photographs of the trail.

On October 5, 2017, plaintiffs filed a complaint in Gladwin County Circuit Court seeking a declaratory judgment acknowledging that they held an easement over the trail. Plaintiffs argued that the Hubers expressly reserved the trail as an easement in Carol's quitclaim deed, and that this intent was made clear by the Lapham Associates survey. Alternatively, plaintiffs claimed that Robyn created an easement appurtenant through Carol's quitclaim deed, since the trail was the most optimal way to access the hayfields. On December 8, 2017, defendants answered plaintiffs' complaint, denying that Robyn ever reserved or conveyed to plaintiffs an interest in defendants' land in any document.

At the bench trial, Sharon testified that the trail was the only safe way to transport farming equipment to plaintiffs' hayfields since drivers speed on Butman and Dutcher roads and their neighbors have attempted repeatedly to run her off these roads. According to Peggy, the path Robyn created in the woods was dangerous because the hill it ran over was akin to a "rollercoaster ride." For her part, Sharon stated that she had used the road behind plaintiffs' property previously to transport farming equipment, but that the trail was far more convenient. Robyn testified that, during his ownership of the property, he transported his farming equipment via Butman and Dutcher roads and the road through the woods on plaintiffs' property with ease. James Augustine and Eldon Wills, farmers who had lived on Butman Road for decades, similarly testified that they had transported farming equipment on Butman and Dutcher roads without issue.

The trial court concluded that the Hubers did not expressly reserve an easement in the deed to Carol or create an easement by implication through the severance of the estate. Regarding plaintiffs' argument for an express easement, the trial court declined to address the language in the Lapham Associates survey, concluding that the parole-evidence rule barred it from doing so. The trial court found that there was no language in the deed indicating an easement over the trial and denied plaintiff's claim for an express easement. The trial court then concluded that plaintiffs failed to establish an implied easement, noting, in part, that it was not reasonably necessary for plaintiffs to use the trail because there were other viable entrances to the hayfields. Therefore, the trial court dismissed plaintiffs' claims. This appeal followed.

## II. ANALYSIS

"Following a bench trial, we review for clear error the trial court's factual findings and review de novo its conclusions of law." *Ligon v City of Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007).

"An easement is the right to use the land of another for a specified purpose." *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997). One type of easement is an easement appurtenant, which is "attache[d] to the land and is incapable of existence apart from the land to which it is annexed." *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). Pertinent to this case, landowners can create an easement appurtenant either expressly, through a document of conveyance, *Chapdelaine v Sochocki*, 247 Mich App 167, 170; 635 NW2d 339 (2001), or by implication, through the severance of a common estate upon which an obvious and permanent servitude has been imposed on one part in favor of another, *Schmidt v Eger*, 94 Mich App 728, 731; 289 NW2d 851 (1980).

## A. EXPRESS EASEMENT

On appeal, plaintiffs first argue that the trial court erred by finding that the Hubers did not expressly reserve an easement over the trail in Carol's quitclaim deed. We disagree.

Landowners can create an express easement by "express reservation in a document of conveyance" where "the owner reserves an easement over it for himself." *Chapdelaine*, 247 Mich App at 170. In pertinent part, Carol's quitclaim deed from the Hubers described the 10-acre parcel as:

> Containing 10.11 acres and being subject to restrictions, reservations, easements, rights-of-way, zoning, and regulations.

Although the term "easements" is employed in the deed, the Hubers did not describe any specific easement that they wished to reserve. To create an express easement, in the transferring document, the easement must be "described sufficiently so that the easement and the parcel of land to which the right is attached can be determined." *Id*. Because there is no relevant mention of the trail in the deed, the deed itself could not create an express easement.

Plaintiffs argue that, if the deed language itself does not evidence the Hubers' intent to reserve an easement, then the Lapham Associates survey can provide some clarity. This Court has held that, "when attempting to discern the parties' intent, we construe together contemporaneous documents relating to the same transaction." *Tomecek v Bavas*, 482 Mich 484, 493; 759 NW 2d 178 (2008). In April 2015, the Hubers conveyed Carol's quitclaim deed and requested the Lapham Associates survey. Both documents were officially stamped and recorded on April 21, 2015—the survey at 4:31 p.m. and the quitclaim deed at 4:32 p.m. Given that the documents both concern the 10-acre parcel, and were recorded within minutes of one another, we can consider them to be one contemporaneous document.

Nonetheless, even considering the documents together, they do not show that the Hubers intended to reserve an easement over the trail. Importantly, the survey does not mention or depict the trail. Plaintiffs argue that the survey's reference to "matters visible" was a reference to the trail. The survey, however, lists other existing markers such as a power pole and a corner post. If the Hubers intended to reserve the trail as an easement, it is reasonable that they would have included this in the list of existing markers. Accordingly, even construing the survey and the deed as one document, there is no evidence from which a factfinder could conclude that the Hubers intended to reserve an easement over the trail, which was later transferred to plaintiffs.

## B. IMPLIED EASEMENT

Alternatively, plaintiffs argue that the Hubers created an implied easement appurtenant in Carol's quitclaim deed. A plaintiff proves an implied easement appurtenant by showing:

> (1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits. [*Schmidt*, 94 Mich App at 731.]

Taking the last element first, an easement is reasonably necessary when "alternative access or utilities cannot be obtained without a substantial expenditure of money or labor." 1 Restatement Property, 3d, Servitudes, § 2.12, p 162. Plaintiffs argue that their use of the trail is reasonably necessary since it is the only safe entrance to the hayfields. According to plaintiffs, the Butman and Dutcher roads entrances are dangerous because of heavy traffic and their neighbors' aggressive driving. Plaintiffs also assert that they cannot use the road Robyn Huber created behind their home because it slopes sharply.

We conclude that the trail was not reasonably necessary at the time of severance, nor is it now reasonably necessary for plaintiffs to continue using it. While plaintiffs stated that Butman and Dutcher roads are too dangerous due to heavy traffic and their neighbors' actions, Robyn Huber, James Augustine, and Eldon Will all testified that they have transported farm equipment on those roads without issue. Further, Peggy stated that the road behind the property was too hilly to use, but Robyn used it without issue when he owned the property and Sharon testified that she occasionally drove farm equipment both over the hill and on the wooded road. Sharon testified that she preferred the trail because it is more convenient, but an easement is not reasonably necessary simply because individuals would be inconvenienced if deprived of its use. *Von Meding v Strahl*, 319 Mich 598, 604; 30 NW 2d 363 (1948). On this record, we are not left

with a definite and firm conviction that the trial court erred by finding that the trail was not reasonably necessary for the continued enjoyment of the property.

Because the trail was not reasonably necessary, the trial court did not err by declining to declare that plaintiffs held an implied easement appurtenant over it. Therefore, because plaintiffs failed to prove that they held an easement over the trail, the trial court did not err by denying plaintiffs' request for a declaratory judgment.

Affirmed. As the prevailing party, defendants may tax costs. MCR 7.219.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood