*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARY LOYER and EILEEN LOYER,

Plaintiffs-Appellees,

v

PAULA M. RINI,

Defendant-Appellant,

and

STEPHEN HUDSON,

Defendant.

UNPUBLISHED
October 6, 2022

No. 356771
Oakland Circuit Court
LC No. 2017-158333-CZ

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

In this boundary dispute, defendant Paula M. Rini appeals as of right the trial court's judgment, entered after a bench trial, holding that plaintiffs Cary and Eileen Loyer have a 30-foot-wide easement over the disputed property, a private road known as Robert Castle Drive.[1] We vacate and remand for further proceedings.

---

[1] Stephen Hudson was also named as a defendant, but he was dismissed from this case before trial and is not a party to this appeal.

-1-

## I. BACKGROUND

This case arises from a boundary dispute between the Loyers and Rini, who are neighbors in White Lake Township, Michigan. The properties at issue are depicted below in the survey attached to the trial court's judgment:[2]



The Loyers reside at Lot 021 and have lived there since 1984. When this action was filed, Rini was the sole owner of Lot 031 and resided there with her fiancé, Stephen Hudson. North of the Loyers' property and east of Rini's property is Lot 017. When this action was filed, Lot 017 was owned by Charles Murphy, but he subsequently conveyed the property to Rini and Hudson.

---

[2] As depicted in the survey, we will refer to Parcel No. 12-15-251-021 as Lot 021, Parcel No. 12-15-251-031 as Lot 031, and Parcel No. 12-15-251-017 as Lot 017.

At issue is an easement on Robert Castle Drive, a private road that runs from the Loyers' property north to Pontiac Lake Road, and is the only means of ingress (entry) and egress (exit) from Lot 021, which otherwise is landlocked. After Rini and Hudson began placing obstructions in the roadway that impeded the Loyers' access to their property, the Loyers filed this action to establish and enforce their rights to use a 30-foot-wide easement on Robert Castle Drive for ingress and egress. The Loyers' complaint alleged that the owners of the properties immediately adjacent to the easement entered into a private road maintenance agreement, recorded in 1987, which memorialized "their rights and obligations" under the 30-foot-wide easement; the owners of Lot 031—Rini's predecessors in interest—did not join this agreement. The complaint also identified Rini's Lot 031 as the only other property at issue in the lawsuit.

Following a bench trial, the trial court held that the Loyers had a 30-foot-wide easement for ingress and egress, consistent with the recorded private road maintenance agreement: two adjacent 15-foot-wide easements, one running along the eastern border of Lot 031 and the other along the western border of Lot 017. In addition, the court found that the Loyers had an easement by prescription and acquiescence at the curved ends of the roadway, extending beyond the 30-foot width, as depicted in a survey prepared by GreenTech Engineering, Inc. Rini now appeals.

## II. DISCUSSION

Rini argues that the trial court's judgment must be reversed because (1) there is no writing enforceable under the statute of frauds that establishes the Loyers' easement rights over Lot 031, and (2) the court was not permitted to issue a judgment affecting Lot 017 since that property was never properly included in this lawsuit.

## A. STANDARDS OF REVIEW

This case involves an action to quiet title—a suit brought by the Loyers to determine their interests in land. See MCL 600.2932; *Richards v Tibaldi*, 272 Mich App 522, 532; 726 NW2d 770 (2006). An action to quiet title is equitable in nature and equitable rulings are reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). "[T]he interpretation and applicability of a statute, such as the statute of frauds" is also reviewed de novo. *Zaher v Miotke*, 300 Mich App 132, 140; 832 NW2d 266 (2013). "De novo review means that we review the legal issue[s] independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). The trial court's factual findings in a bench trial are reviewed for clear error, but its legal conclusions are reviewed de novo. *Trahey v Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

## B. LOT 031

Rini argues that the trial court erred by holding that a 30-foot-wide easement for ingress and egress existed, which included a 15-foot-wide easement on Rini's Lot 031. Rini contends that the trial court's judgment contravenes the statute of frauds because the judgment relies on the private road maintenance agreement, which was not signed by Rini or her predecessors in interest on Lot 031, and the GreenTech survey, which does not establish that the easement is 30 feet wide.

-3-

In order to preserve an issue for appeal, a party generally must raise the issue before the trial court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). And "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). Although Rini did not specifically raise a statute-of-frauds argument before the trial court, Rini asserted in her closing brief that the private road maintenance agreement could not be used to create easement rights over Lot 031 because "[n]either [Rini] nor [Rini's] predecessors signed the road maintenance agreement." In essence, Rini's reliance on the statute of frauds on appeal is a more advanced argument about the validity of the private road maintenance agreement to create easement rights over Lot 031. Thus, we consider this issue preserved for our review.[3]

"In Michigan, the sale of land is controlled by the statute of frauds," found at MCL 566.106 and MCL 566.108. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 524; 644 NW2d 765 (2002). MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 similarly states:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing[.]

In *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998), our Supreme Court held:

> An easement is an interest in land that is subject to the statute of frauds. In order to create an express easement, there must be language in the writing

---

[3] Even if we determined that Rini did not preserve the issue, we "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Consideration of Rini's statute-of-frauds argument "is necessary for a proper determination of the case," and "the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*.

manifesting a clear intent to create a servitude. Any ambiguities are resolved in favor of use of the land free of easements. [Footnotes omitted.]

Rini does not dispute the *existence* of an easement on Robert Castle Drive but instead contests the *size* of that easement as found by the trial court. Rini's statute-of-frauds argument reflects the trial court's lack of clarity in explaining the legal basis for its determination that the Loyers have a 30-foot-wide easement, which includes a 15-foot-wide easement over a portion of Rini's Lot 031. In its opinion and order, the trial court stated that the Loyers "have an easement in conformity with the private road maintenance agreement which extends fifteen feet on either side of the property line." The trial court's final judgment likewise states that the Loyers "have an easement in conformity with the Private Road Maintenance Agreement . . . which extends fifteen (15) feet on either side of the property line as described in that document." As Rini indicates, however, neither she nor an owner of record for Lot 031 was a party to the private road maintenance agreement, so that written agreement cannot serve as a basis for finding that the Loyers have an easement interest over a 15-foot-wide portion of Lot 031 enforceable under the statute of frauds. Nor did the Loyers introduce into evidence any other document signed by the owners of Lot 031, or their predecessors in interest, expressly granting an easement over Lot 031.

The Loyers argue that, although the trial court referenced the private road maintenance agreement when determining the scope of the easement, the trial court did not solely rely on this agreement to find the existence of an easement over Lot 031. Rather, the Loyers contend, the trial court analyzed several recorded instruments that supported a 30-foot easement. Even if that is accurate, it does not explain the legal basis for the trial court's determination that an easement over Lot 031 existed in the first instance. The legal basis for the trial court's finding that the Loyers have a 30-foot-wide easement that extends 15 feet on either side of the property line is simply unclear from the record.

In its opinion and order, the trial court found that the Loyers have an easement by acquiescence and prescription at the *curves* that extend beyond the 15-foot-wide portions of Lots 017 and 031, at both the northern and southern ends of Robert Castle Drive. But the trial court did not otherwise specify its legal conclusions supporting its determination that an easement existed with respect to the 15-foot-wide portions on either side of the property line separating Lots 017 and 031. For instance, the trial court did not specify whether the Loyers possessed an express easement, an easement by prescription or acquiescence, an implied easement, or a property interest derived under some other legal theory.

Although Rini is correct that an express easement would be an interest in land subject to the statute of frauds, *Forge*, 458 Mich at 205, an easement interest can arise in other ways. As noted in the trial court's written opinion, an easement by prescription is established by actual, continuous, open, notorious, hostile, and uninterrupted use for the relevant 15-year statutory period. See *Marlette Auto Wash, LLC, v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018) (explaining that a claim of easement by prescription involves the same elements as adverse possession, except possession need not be exclusive). Further, because the Loyers' parcel

is landlocked, an easement could have arisen by implication. As this Court explained in *Charles A. Murray Trust v Futrell*, 303 Mich App 28, 41-42; 840 NW2d 775 (2013):

> An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." *Chapdelaine v Sochocki*, 247 Mich App 167, 172; 635 NW2d 339 (2001), citing *Schmidt* [*v Eger*, 94 Mich App 728, 732; 289 NW2d 851 (1980)]. "An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his property and leaves himself landlocked." *Chapdelaine*, 247 Mich App at 172-173. "This sort of implied easement is not dependent on the existence of any established route or quasi-easement prior to the severance of the estate by the common grantor; it is first established after the severance." *Schmidt*, 94 Mich App at 733. "A right of way of necessity is not a perpetual right. It ceases to exist when the necessity for its continuance ceases." *Waubun Beach* [*Ass'n v Wilson*, 274 Mich 598, 609; 265 NW 474 (1936)].

The trial court did not make any factual findings or conclusions of law explaining what legal theory supported the existence of a 30-foot-wide easement that included a 15-foot-wide easement over Lot 031. Without knowing the factual or legal basis for the trial court's conclusion that the Loyers have an easement over Lot 031, it is not possible to determine whether any such easement would even be subject to the statute of frauds. Therefore, we vacate the portion of the trial court's judgment holding that the Loyers have an easement over Lot 031 as specified in the private road maintenance agreement and remand for the trial court to articulate the legal basis for finding this easement.

## C. LOT 017

Rini also argues that the trial court erred by including Lot 017 in its final judgment because Lot 017 was not included in the Loyers' complaint.

The trial court's judgment expressly provides that it affects Lot 017. The judgment also provides that the Loyers "have an easement in conformity with the Private Road Maintenance Agreement . . . which extends fifteen (15) feet on either side of the property line as described in that document," which encompasses Lot 017.

MCR 3.411(B) describes the requirements for a complaint filed in an action to determine interests in land:

> (1) The complaint must describe the land in question with reasonable certainty by stating
>
> (a) the section, township, and range of the premises;
>
> (b) the number of the block and lot of the premises; or

-6-

(c) another description of the premises sufficiently clear so that the premises may be identified.

(2) The complaint must allege

(a) the interest the plaintiff claims in the premises;

(b) the interest the defendant claims in the premises; and

(c) the facts establishing the superiority of the plaintiff's claim.

When the Loyers filed this action, Murphy, then the owner of Lot 017, was not named as a party, and Lot 017 was not identified in the complaint. Thus, the complaint did not describe Lot 017 at all, let alone "with reasonable certainty." After the Loyers filed this action, Rini and Hudson purchased Murphy's interest in Lot 017, but the Loyers, despite having knowledge of this transaction, never sought to amend their complaint to include Lot 017 as part of the "land in question" in this lawsuit.

Although Lot 017 was not described in the complaint, it was the subject of substantial evidence and testimony at trial. MCR 2.118(C) expressly contemplates this scenario, authorizing amendments of the pleadings to conform to the evidence. MCR 2.118(C)(1) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

Rini never consented to the inclusion of Lot 017 in this action, either expressly or impliedly, and the Loyers never moved to amend their complaint to include Lot 017. On the contrary, Rini opposed the Loyers' motion for settlement of the judgment on the ground that the court's judgment could not address Lot 017 because Lot 017 was not made a part of the litigation. And during trial, Hudson's attorney informed the trial court that although there had been discussion at trial about "quieting title" to Lot 017, this property was not part of the complaint or the case. The trial court responded, "We all know that, I think." Considering this record, we cannot conclude that the parties consented, expressly or impliedly, to the inclusion of Lot 017 in this lawsuit.

Nevertheless, the Loyers argue that Rini should be estopped from challenging the judgment's application to Lot 017. The Loyers assert that Rini and Hudson misled the trial court to believe that Hudson had no interest in Lot 017—leading to Hudson's dismissal from the suit—when in fact, Hudson was under contract to purchase Lot 017.[4] The Loyers do not cite any legal

---

[4] Hudson moved to be dismissed from the case in March 2018 on the basis that he did not have an interest in any property that was the subject of litigation. But Murphy testified that he entered into a purchase agreement in January 2018 with Rini and Hudson to sell them Lot 017. Further, in what appears to be a clear act of gamesmanship, after Hudson successfully had himself dismissed from the case with prejudice on the basis of his representations, Rini conveyed Lot 031 to herself

basis for their estoppel argument, and therefore we consider this argument abandoned. A party cannot simply "announce a position . . . then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Even so, the Loyers' estoppel argument does not address their failure to include Lot 017 in the complaint, as required by MCR 3.411(B), or to amend the pleadings to conform to the evidence, as authorized by MCR 2.118(C)(1).

The trial court erred by including Lot 017 within the scope of the easement awarded to the Loyers because Lot 017 was not included in the Loyers' complaint, Rini never consented to the inclusion of Lot 017 in this action, and the Loyers never moved to amend their complaint to include Lot 017. Accordingly, we vacate the portion of the trial court's judgment related to Lot 017.[5]

## D. REMAINING ARGUMENTS

Because we are vacating portions of the trial court's judgment and remanding for further proceedings, it is unnecessary to discuss Rini's remaining challenges to the judgment. One of these additional unresolved issues, however, is likely to arise on remand, so we choose to address it for purposes of judicial efficiency.

Rini contends that the trial court was prohibited from entering a judgment affecting Lot 031 because Hudson later acquired an interest in that property and was not a party to this action at the time judgment was entered. Although Rini failed to preserve this argument below, we reach the issue because it "involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

MCR 3.411 provides in pertinent part:

(H) Judgment Binding Only on Parties to Action. Except for title acquired by adverse possession, the judgment determining a claim to title, equitable title, right to possession, or other interests in lands under this rule, determines only the rights and interests of the known and unknown persons who are parties to the action, and

_____

and Hudson on June 4, 2018, by quitclaim deed. Despite this questionable behavior, our decision to vacate the portion of the judgment related to Lot 017 does not turn on Hudson's dismissal as a party but rather relies on the Loyers' failure to identify the property of Lot 017 in the complaint, or to amend the complaint to conform to the evidence.

[5] We express no opinion whether the Loyers do indeed have easement rights over Lot 017. We only hold that it was improper for the court to enter a judgment that encompassed Lot 017 when that property was never properly included as part of this action. Given our resolution of the issue, it is also unnecessary to consider Rini's argument that the trial court's judgment related to Lot 017 is invalid on the ground that Hudson, an interest holder in Lot 017, was not a party to this litigation when the judgment was entered.

of persons claiming through those parties by title *accruing after the commencement of the action*.  [Emphasis added.]

Rini complains that Hudson was not a party to this lawsuit at the time the trial court entered its judgment affecting Lot 031, but Hudson did not acquire his interest in Lot 031 until *after* this lawsuit was commenced, by title acquired through Rini, a party to this action.  Thus, because Hudson's interest in Lot 031 "accru[ed] after the commencement of the action," MCR 3.411(H) does not prohibit enforcement of any judgment against Hudson with respect to Lot 031.

## III.  CONCLUSION

We vacate the portion of the trial court's judgment awarding the Loyers an easement over a portion of Lot 017.  We also vacate the portion of the trial court's judgment holding that the Loyers have an easement over a 15-foot-wide section of Lot 031 and remand for the trial court to sufficiently articulate the legal basis for finding this easement.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates